167 Cal.App.4th 885 (2008)
In re N.D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
N.D., Defendant and Appellant.
No. F053397.
Court of Appeals of California, Fifth District.
October 21, 2008.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*888 Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brian Alvarez and Leanne L. LeMon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
WISEMAN, Acting P. J.
The main issue in this case concerns amendments to Welfare and Institutions Code sections 731 and 733 that took effect on September 1, 2007.[1] Under these amendments, a juvenile court can commit a ward to the Division of Juvenile Facilities (DJF) (formerly the California Youth Authority) only if the petition upon which the ward is committed is for certain enumerated offenses. We hold that these amendments do not apply to a disposition that occurred before September 1, 2007. The common law rule requiring application of statutes that mitigate punishment to all cases not yet final on their effective dates is inapplicable. The amendments did not mitigate punishment, but only limited the places in which a ward can be confined. Since the juvenile court committed minor N.D. to the DJF before September 1, 2007, he is not entitled to reversal of the commitment.
In the unpublished portion of this opinion, we conclude that it is unnecessary to reach N.D.'s contention that another recently enacted law, section 731.1, is unconstitutional. Finally, we reject N.D.'s claim that the juvenile court abused its discretion in committing him to the DJF. We affirm the judgment.

FACTUAL AND PROCEDURAL HISTORIES
N.D., then 15 years old, entered a garage in Fresno and took a bicycle on September 17, 2005. The district attorney filed a juvenile wardship petition *889 pursuant to section 602 alleging one felony count of first degree burglary. (Pen. Code, § 459.) The juvenile court found the allegation true based on N.D.'s admission and determined that the maximum period of confinement was six years. The court deferred entry of judgment pursuant to section 790.
Within less than three months, N.D. was found in possession of marijuana at school on November 14, 2005, and again on December 1, 2005. The district attorney filed a wardship petition alleging two misdemeanor counts of possessing marijuana on school grounds. (Health & Saf. Code, § 11357, subd. (e).) N.D. admitted to one count, and the court terminated his deferred-entry-of-judgment status. It imposed probation and committed him to the Elkhorn Correctional Facility boot camp for a period not to exceed 365 days. N.D. entered the boot camp program on April 28, 2006.
On December 6, 2006, the probation officer filed a petition in the juvenile court pursuant to section 777 alleging that, while in boot camp, N.D. committed numerous violations of the terms of his probation. He repeatedly violated the boot camp's rules, refused to follow staff instructions, and admitted to making a canteen of "pruno," a homemade fermented drink. A probation report supporting the petition stated, among other things, that N.D. admitted to using drugs while at home on a pass and absconded while on another pass. After N.D. admitted to the court that he made the pruno, the court removed him from the boot camp program. It committed him to the Elkhorn Correctional Facility Delta program or, if N.D. failed the required mental and physical screenings, to the Juvenile Justice Campus. N.D. was found to be ineligible for the Delta program because he was taking psychotropic medication.
On January 31, 2007, while in a classroom at the Juvenile Justice Campus, N.D. hit another ward in the face. The victim did not know N.D. N.D. explained that the victim had been "`mean mugging'" him. The district attorney filed a wardship petition alleging a misdemeanor battery on school property. (Pen. Code, § 243.2, subd. (a)(1).) N.D. admitted to simple misdemeanor battery. (Pen. Code, § 242.)
The probation officer, stating that a DJF commitment would be premature, recommended that the court impose an extended commitment to the Juvenile Justice Campus. The court's view, however, was that the battery showed N.D. was a danger to the other wards, and his history as described in the probation report showed he had failed to respond to less restrictive placements. It *890 committed him to DJF[2] and stated that the maximum period of confinement was six years two months, consisting of six years for the burglary and two months for the battery.

DISCUSSION

I. Amended sections 731 and 733

N.D. committed his latest offense, the battery, on January 31, 2007. On April 26, 2007, the court accepted N.D.'s admission that he committed battery and committed him to DJF on May 30, 2007. On September 1, 2007, amendments to sections 731 and 733 took effect. (Stats. 2007, ch. 175, §§ 19, 22, 37.) Section 731 provides that the juvenile court can commit a ward to DJF "if the ward has committed an offense described in subdivision (b) of Section 707 and is not otherwise ineligible for commitment to the division under Section 733." Section 733 provides that a ward of the juvenile court shall not be committed to DJF if "the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707, unless the offense is a sex offense set forth in paragraph (3) of subdivision (d) of Section 290 of the Penal Code." None of the offenses alleged in any of the petitions against N.D. were described in section 707, subdivision (b), and none were sex offenses. N.D. argues that the amendments should apply to himand his DJF commitment therefore should be reversedbecause his case was still pending on appeal when the amendments took effect.
(1) His argument is based on a common law doctrine embraced by the California Supreme Court in In re Estrada (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948]. In June of 1963, Estrada escaped from the California Rehabilitation Center. In September of that year, statutory amendments became effective under which the minimum preparole sentence for a nonviolent escape was reduced. In October, Estrada was convicted of escape. After he was captured and returned and the addiction proceedings terminated, the Adult Authority continued to hold him pursuant to the former law on escapes. (Id. at pp. 742-743.) In a habeas corpus proceeding, the Supreme Court ordered Estrada's sentence for escape to be fixed as provided in the amended statutes. (Id. at p. 751.) The court explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined *891 that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (In re Estrada, supra, 63 Cal.2d at p. 745.) The Legislature can provide the contrary by including a saving clause if it wishes. The rule, therefore, is this: "[W]here the amendatory statute mitigates punishment and there is no saving clause, ... the amendment will operate retroactively so that the lighter punishment is imposed" in all cases in which judgment was not yet final when the amendment took effect. (In re Estrada, supra, 63 Cal.2d at p. 748.) Cases in which judgment is not yet final include those in which a conviction has been entered and sentence imposed but an appeal is pending when the amendment becomes effective. (People v. Babylon (1985) 39 Cal.3d 719, 722 [216 Cal.Rptr. 123, 702 P.2d 205]; People v. Figueroa (1993) 20 Cal.App.4th 65, 70 [24 Cal.Rptr.2d 368].) The Estrada rule has been applied to juvenile delinquency judgments. (In re Aaron N. (1977) 70 Cal.App.3d 931, 938 [139 Cal.Rptr. 258].)
(2) We hold that the rule of Estrada does not apply to this case. The amendments to sections 731 and 733 do not mitigate any punishment, for they do not reduce the amount of time any juvenile offender is confined. Instead, they limit the places in which juveniles committing certain offenses can be confined. Nothing in the statutes indicates an intention on the part of the Legislature to reduce the severity of punishment for any offense. The parties have not pointed to anything in the legislative history reflecting this intention and we have found nothing in our own research that does so.
The amendments were enacted as part of chapter 175 of the Statutes of 2007 in order to make "necessary statutory changes to implement the Budget Act of 2007...." (Stats. 2007, ch. 175, § 38.) A report of the California Little Hoover Commission explains the budget impact. To settle a lawsuit brought on behalf of inmates of state juvenile facilities, the state entered into a consent decree in November of 2004. The cost of compliance with the consent decree proved to be high: "Realizing the state could not afford to comply with the ... consent decree, in 2007, policy-makers acted to reduce the number of youth offenders housed in state facilities by enacting realignment legislation which shifted responsibility to the counties for all but the most serious youth offenders. This major step had long been recommended by youth advocates and experts, and by this Commission in 1994 and 2005, as many counties had demonstrated they were more effective and efficient in managing and rehabilitating youth offenders." (Little Hoover Com., Juvenile Justice Reform: Realigning Responsibilities (July 2008) pp. i-ii *892 [as of Oct. 21, 2008] (hereafter Juvenile Justice Reform).) By transferring responsibility for some wards to county authorities, the state saved about $250,000 per ward per year. (Juvenile Justice Reform, supra, at pp. i, 6.) At the same time, the legislation compensated the counties for the additional wards for which they would be responsible under a formula based on a rate of $117,000 per ward per year. (§§ 1952, 1953, 1953.5, 1954.)
Amended sections 731 and 733 are the parts of this "realignment legislation" that limit the offenses for which juvenile courts can commit wards to state authorities. The commission's report is not, of course, an expression of intent by the Legislature, but it does provide helpful background tending to support the view that the amendments to sections 731 and 733 were motivated by a desire to reduce the cost and increase the effectiveness of juvenile confinementnot to mitigate the punishment for those juvenile offenses that are no longer eligible for DJF commitments.
(3) Since the amendments do not mitigate punishment, we apply the default rule that statutes only operate prospectively. (4) "A new or amended statute applies prospectively only, unless the Legislature clearly expresses an intent that it operate retroactively." (People v. Ledesma (2006) 39 Cal.4th 641, 664 [47 Cal.Rptr.3d 326, 140 P.3d 657].) Amended section 733 states that it "shall be effective on and after September 1, 2007." An uncodified portion of the legislation states that portions including the amendments to sections 731 and 733 "shall become operative on September 1, 2007." (Stats. 2007, ch. 175, § 37.) There is no expression of any intent that the amendments operate retroactively.
N.D. relies on People v. Benefield (1977) 67 Cal.App.3d 51 [136 Cal.Rptr. 465]. There, the defendant was convicted as an adult and sentenced to state prison for crimes committed when he was a juvenile. (Id. at pp. 54-55.) While his appeal was pending, the Legislature changed the law to allow courts to remand these defendants to the Youth Authority before sentencing them to state prison, for the purpose of determining whether they were suitable for a Youth Authority commitment. (Id. at pp. 56-57.) Noting that the parties agreed that the new law would "benefit, and in effect impose a lighter punishment" on the defendant, the Court of Appeal held that the new law was applicable to the defendant under Estrada. (Id. at pp. 57-58.) N.D. argues that this shows the amendments to sections 731 and 733 are applicable to him because, like those amendments, the law at issue in Benefield affected only the defendant's placement, not the length of his confinement.
We do not believe the difference between confinement with DJF and confinement in a county facility is a mitigation of punishment even if the *893 difference between state prison and DJF does constitute one. In any event, we decline to extend Benefield to cover this case.
N.D. also relies on a footnote in a dissenting opinion in In re Pedro T. (1994) 8 Cal.4th 1041, 1054, fn. 3 [36 Cal.Rptr.2d 74, 884 P.2d 1022] (dis. opn. of Arabian, J.). Justice Arabian stated that "[t]he rule of Estrada has not been limited to cases involving a mitigation of punishment but has been invoked in a wide variety of circumstances ranging from complete or substantial decriminalization of conduct [citations] to modification of the trial court's discretionary authority [citations]." (Ibid.) As the present case does not involve any sort of decriminalization, we presume N.D. intends to rely on the notion of "modification of the trial court's discretionary authority." One of the two examples of this modification cited by Justice Arabian was an enactment allowing for alternative sentencing to county jail or state prison at the trial court's discretion, which was considered in People v. Francis (1969) 71 Cal.2d 66, 75 [75 Cal.Rptr. 199, 450 P.2d 591]. Since the new law in question there gave the trial court discretion to impose a county jail term of one year or less or a state prison term of one to 10 years, while the old law simply prescribed a term of one to 10 years in state prison, it seems to us that the new law did mitigate punishment by allowing a shorter sentence. (Ibid.) Justice Arabian's second example is a law "eliminating discretion to order forfeiture of bail and making discharge mandatory," as discussed in People v. Durbin (1966) 64 Cal.2d 474, 479 [50 Cal.Rptr. 657, 413 P.2d 433]. (In re Pedro T., supra, 8 Cal.4th at p. 1054, fn. 3 (dis. opn. of Arabian, J.).) The new law at issue prohibited forfeiture of bail in cases where the defendant was physically unable to appear because of death, illness, insanity, or detention by civil or military authorities. (People v. Durbin, supra, at p. 476.) The Supreme Court held that the rule of Estrada applied to this new law regardless of "whether the forfeiture of bail is considered a civil penalty or as akin to criminal punishment...." (People v. Durbin, supra, at p. 479.) Again, the reason why Estrada applied was that the new law reduced a sanction imposed on a defendant. As we have said, there is no reason to believe in this case that the Legislature limited the offenses for which DJF commitments may be imposed because it wished to reduce the sanctions imposed on juveniles committing other offenses. N.D.'s reliance on Justice Arabian's footnote therefore does not carry the day.
(5) Finally, N.D. relies on the following language in People v. Ledesma, supra, 39 Cal.4th at page 664: "Application of a change in law that occurred after the crime took place is retroactive only if it changes the legal consequences of a defendant's past conduct." N.D. says this means the amendments must be applied to him retroactively because they changed the legal consequences of his past conduct. He misunderstands the Supreme Court's point. The quoted passage from Ledesma is part of an explanation of the meanings of the terms "retroactive" and "prospective." Applying a new law *894 in proceedings occurring after its passage constitutes retroactive application if the new law changes the legal consequences of the conduct. (If it does noti.e., if the change is merely proceduralthen applying it to the defendant does not constitute retroactivity even though the crime occurred before the new law became effective.) Whether a new law that changes the consequences of past conduct should be applied retroactively is a different question. Some changesthose, for instance, that criminalize previously permitted conductcannot be applied retroactively. Contrary to N.D.'s argument, therefore, Ledesma did not hold that every change in law that alters the legal consequences of conduct occurring before the change must be applied retroactively.
(6) In holding as we do, we agree with the result in In re Carl N. (2008) 160 Cal.App.4th 423 [72 Cal.Rptr.3d 823], but not with all of its reasoning. The court in that case gave two reasons for its holding that the amendments to sections 731 and 733 did not apply to a disposition still pending on appeal when the amendments took effect. First, it stated that section 731.1, which was enacted as part of the same legislation, "is essentially a nonretroactivity clause that applies to sections 731 and 733." (In re Carl N., supra, at p. 437.) We do not think section 731.1, which sets forth a procedure by which DJF commitments made under the old law can be recalled, expresses any clear intention about whether the new law applies to dispositions not yet final when the new law took effect. Second, the Carl N. court held: "[T]he statutes on which Carl reliessections 731 and 733do not address punishment or penalties for criminal offenses. Rather, they govern where a juvenile delinquent may serve time for purposes of rehabilitation." (In re Carl N., supra, 160 Cal.App.4th at p. 438.) We agree the amendments do not mitigate punishment, but conclude Carl N. overstates the matter by saying they do not address punishment. The amendments address juvenile confinement, and the law acknowledges that punishment is or may be among the purposes of juvenile confinement, as long as it is consistent with the ultimate goal of rehabilitation. (§ 202, subds. (b), (e)(3)-(5).)[3]

II., III.[*]

*895 DISPOSITION

The judgment is affirmed.
Levy, J., and Dawson, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and III.
[1] Subsequent statutory references are to the Welfare and Institutions Code unless noted otherwise.
[2] The court actually used the name California Youth Authority (CYA). The CYA was renamed California's Department of Corrections and Rehabilitation, Juvenile Justice, effective July 1, 2005. The DJF is part of the Division of Juvenile Justice. (Gov. Code, §§ 12838, 12838.3, 12838.5, 12838.13.) DJF is referenced in statutes, such as sections 731 and 733, that formerly referred to CYA. In this opinion we will use the name DJF uniformly, even when referring to older cases and statutes.
[3] Another case cited by the People, In re Brandon G. (2008) 160 Cal.App.4th 1076, 1081 [73 Cal.Rptr.3d 273], refused to apply amended sections 731 and 733 retroactively, but did not address the applicability of the Estrada rule.
[*] See footnote, ante, page 885.