CANTIL-SAKAUYE, C. J., Dissenting.
Despite the Legislature’s clear provision in Welfare and Institutions Code section 733, subdivision (c) (section 733(c))[1] that a juvenile ward is ineligible for commitment to the “Department of Corrections and Rehabilitation, Division of Juvenile Facilities” (DJF) when the juvenile ward’s “most recent offense alleged in any petition and admitted or found to be true by the court” is not an offense listed in section 707, subdivision (b) (section 707(b)) or one of the sex offenses described in subdivision (c) of Penal Code section 290.008 (Penal Code section 290.008(c)), the majority concludes that a juvenile court retains the discretion to commit such a juvenile ward to the DJF by using its authority under section 782 to dismiss the most recently sustained petition and reach back to the last sustained petition if the minor is DJF eligible under such petition. (§ 731, subd. (a)(4).) I cannot agree. The majority’s construction of the statutes does not properly harmonize them. It renders section 733(c) ineffective and essentially meaningless. I, therefore, dissent.
It has long been and continues to be the law that when a minor is before the juvenile court for disposition based on a section 602 petition, “[section] *421 725.5 and other relevant policies of Juvenile Court Law require that the court consider ‘the broadest range of information’ in determining how best to rehabilitate a minor and afford them adequate care . . . .” (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2012) Disposition of Ward, § 3.92[3][a], p. 3-137.) The juvenile court must consider “the safety and protection of the public, the importance of redressing injuries to victims, and the best interests of the minor” in its deliberations regarding disposition. (§ 202, subd. (d).) “No ward of the juvenile court shall be committed to the [DJF] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he [or she] will be benefited by the reformatory educational discipline or other treatment provided by the [DJF].” (§ 734.) Thus, in all cases a juvenile ward may be committed to the DJF only if such commitment is appropriate under the circumstances specific to that individual juvenile offender.
However, in 2007, the Legislature acted to impose further limitations on the discretion of the juvenile court with respect to DJF commitments. Responding to both policy arguments and budgetary constraints (In re N.D. (2008) 167 Cal.App.4th 885, 891-892 [84 Cal.Rptr.3d 517]; Little Hoover Com., Juvenile Justice Reform: Realigning Responsibilities (July 2008) pp. i-ii <http://www.lhc.ca.gov/studies/192/reportl92.html> [as of Aug. 27, 2012]), the Legislature passed juvenile justice realignment legislation as part of a budget trailer bill and a subsequent cleanup bill. (Stats. 2007, ch. 175, §§ 19, 22, pp. 2089, 2090; Stats. 2007, ch. 257, § 2, p. 2814.) The legislation expressly restricts the normal dispositional authority of the juvenile court.
Specifically, section 731, subdivision (a)(4) (section 731(a)(4)) provides that DJF commitments are available for only those juveniles who are or have been ordered and adjudged to be wards of the court under section 602. Further, only those juvenile wards who have committed a serious or violent felony offense described in section 707(b) or a sexual offense described in Penal Code section 290.008(c) are eligible for a DJF commitment. (§ 731(a)(4).) And among that class of juvenile offenders, DJF commitment is limited to those juvenile wards whose “most recent offense alleged in any petition and admitted or found to be true by the court” is a serious or violent offense under section 707(b) or a sex offense specified in Penal Code section 290.008(c). (§ 733(c).) In other words, the statutes do not authorize commitment to the DJF in the unrestricted discretion of the juvenile court based on the court’s review of the overall delinquent history of a juvenile offender or on whether the minor still may be considered generally a serious, violent or sexual offender dangerous to the community for whom DJF commitment is appropriate. (V.C. v. Superior Court (2009) 173 Cal.App.4th 1455, 1468 [93 Cal.Rptr.3d 851] (V.C.).) Rather, the statutes limit the pool of juvenile *422 offenders who may be committed to the DIE to juveniles who are wards of the court based on current section 707(b) or Penal Code section 290.008(c) offenses.
The language of section 733(c) specifically defines those who are considered to have such a current qualifying offense. It provides that a juvenile ward is ineligible for commitment to the DIE when “the most recent offense alleged in any petition and admitted or found to be true by the court” is not one of the DJE-qualifying offenses. (Ibid.) As the majority recognizes (maj. opn., ante, at p. 404), the phrase “the most recent offense alleged in any petition” (italics added) logically refers to the allegations of violation pled in a section 602 petition. (In re M.B. (2009) 174 Cal.App.4th 1472, 1477-1478 [95 Cal.Rptr.3d 359]; In re J.L. (2008) 168 Cal.App.4th 43, 60 [85 Cal.Rptr.3d 35]; see In re D.J. (2010) 185 Cal.App.4th 278, 286 [110 Cal.Rptr.3d 261].) The phrase “admitted or found to be true by the court” is most reasonably understood to refer to the juvenile court’s jurisdictional findings. (§ 733(c); see §§ 657, subd. (b), 701, 702; Cal. Rules of Court, rules 5.774(e), 5.778, 5.780(e)(3).) Read with this understanding, eligibility/ineligibility for DIE commitment under section 733(c) is determined when a minor has admitted committing a criminal offense alleged in a section 602 petition at his or her detention hearing or later, or when the allegation of a criminal offense in a section 602 petition is found true by the juvenile court at the jurisdictional hearing, i.e., when the section 602 petition is sustained. It is at that point that the juvenile court has taken jurisdiction over the minor based on the commission of the criminal offense as charged in the petition and that offense becomes the minor’s “most recent offense” for purposes of section 733(c). If that most recent offense does not make the minor ineligible for a DIE commitment under section 733(c) and the minor is eligible for commitment to the DIE under section 731(a)(4), then the juvenile court may exercise its discretion at disposition to adjudge the minor to be a ward of the court, or to continue wardship for a minor who has previously been adjudged a ward of the court and commit the ward to the DIE.
Construing the combination of section 731(a)(4) and section 733(c) in this way furthers the. legislative purposes of reducing the number of juvenile offenders committed to costly state-level facilities and keeping all but the most dangerous offenders in appropriate and effective local placements. (In re N.D., supra, 167 Cal.App.4th at pp. 891-892; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 81 (2007-2008 Reg. Sess.) as amended July 19, 2007, p. 2; Assem. Floor Analysis of Sen. Bill No. 81 (2007-2008 Reg. Sess.) as amended July 19, 2007, p. 1; see § 1960 [“The Legislature finds and declares that local youthful offender justice programs, including both custodial and noncustodial corrective services, are better suited to provide rehabilitative services for certain youthful offenders than state-operated facilities. Local communities are better *423 able than the state to provide these offenders with the programs they require, in closer proximity to their families and communities . . . .”].) Requiring DJF commitments to be based on “the” (§ 733(c)), not “a,” most recently sustained juvenile petition also encourages, promotes, and rewards a juvenile ward’s improvement in behavior even though the juvenile may not have been completely successful in reforming his or her conduct.
In situations where the prosecutor views the juvenile’s most recent offense to demonstrate not rehabilitative progress, but a continuation of prior serious behavioral problems for which the juvenile is on probation under a DJF-eligible sustained petition, the prosecutor can file a notice of probation violation under section 777. A notice of probation violation does not trigger the terms of section 733(c). (In re M.B., supra, 174 Cal.App.4th at pp. 1474-1475.) Nor does a violation of probation proceeding improperly circumvent section 733(c). Rather, the Legislature’s choice to exclude probation violations that factually involve the commission of DJF-ineligible offenses from section 733(c) reasonably recognizes that in such situations the juvenile court may order a commitment to the DJF based on the prior sustained eligible offense, with the maximum term of confinement correspondingly limited by that offense. (John L. v. Superior Court (2004) 33 Cal.4th 158, 165 [14 Cal.Rptr.3d 261, 91 P.3d 205].) Where an extension of the juvenile court’s jurisdiction is appropriate, for example, to allow further services and monitoring, a new petition is necessary. The prosecutorial discretion to proceed by either section 777 notice or the filing of a new section 602 petition permits a flexible approach to the individual juvenile’s situation and preserves the incentive for a juvenile on probation for a DJF-qualifying offense to reform. (See maj. opn., ante, at p. 408.)
Moreover, where a prosecutor files a section 602 petition alleging a new offense or offenses, but subsequently either the prosecutor or the juvenile court concludes the minor’s history demonstrates that proceeding by way of a notice of probation violation is more appropriate and in the best interests of the minor, dismissal of the new section 602 petition, in whole or in part, pursuant to section 782, is not prohibited by section 733(c)—provided the dismissal is ordered prior to entry of jurisdictional findings on the new petition.[2] Until the allegations of the new petition have been admitted or found true, the restrictions of section 733(c) are not triggered.
I cannot agree, however, with the majority that section 782 is available after the juvenile court enters jurisdictional findings sustaining a new section *424 602 petition alleging a DJF-ineligible offense. Although there is no reference in section 733(c), or its legislative history, to section 782 and nothing in the language of the statute or its history expressly restricts the court’s use of its dismissal authority in this situation, such restriction is necessarily and plainly implied.[3] Otherwise, a juvenile court could always avoid the DJF-ineligibility provisions of section 733(c), negating the provisions of such statute and frustrating the legislative purposes of the juvenile justice realignment legislation.
That is, in the situation where the juvenile court would conclude, based on all the information before it, that a DJF commitment should not be ordered for a juvenile offender, it would be unnecessary for section 733(c) to provide that DJF commitment is not permitted. Section 733(c) meaningfully operates only in the circumstance where the juvenile court would otherwise be inclined to order a DJF commitment. If, however, the juvenile court has the discretion to dismiss the most recently sustained petition under section 782 whenever it believes a DJF commitment is appropriate and can be reached by proceeding on a section 777 notice of probation violation, the very specific language in section 733(c) restricting eligibility to “the most recent” sustained petition offense is illusory. The majority’s interpretation of the statutes to allow such dismissals violates the fundamental rule of statutory interpretation that presumes every part of a statute has some meaning and effect, as well as the corollary rule requiring us to avoid, if possible, a construction that renders statutory language surplusage. (People v. Arias (2008) 45 Cal.4th 169, 180 [85 Cal.Rptr.3d 1, 195 P.3d 103].)
At a minimum, the majority’s construction of the statutes rewrites section 733(c) to allow a juvenile court to order a DJF commitment if it finds the juvenile offender has committed and is on probation for “a” recent DJF-qualifying offense. This violates the principle of statutory construction that precludes us from adding or altering statutory language “to accomplish a *425 purpose that does not appear on the face of the statute or from its legislative history.” (Burden v. Snowden (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)
Moreover, I believe use of section 782 in this case is inappropriate for an additional reason. Section 782 authorizes a dismissal if it is in the interests of justice and required for the welfare of the minor. Both are required and a dismissal is unauthorized if either prong is not met. Through sections 731(a)(4) and 733(c), the Legislature has determined that the public protection and safety interests of society and the rehabilitative interest of juvenile offenders is best balanced by placement of nonserious or nonviolent juvenile offenders, or those whose offense is nonsexual, at the local level and that a state-level DJF commitment should be reserved for those juvenile offenders who have been currently adjudicated to be serious or violent, or are certain sexual offenders. The use of section 782 to evade the plain meaning of the restriction in section 733(c) cannot be in the interests of justice as those interests have already been determined by the Legislature. (V.C., supra, 173 Cal.App.4th at p. 1468.) A dismissal in such a situation must be considered unauthorized under section 782, which requires a dismissal to be both in the interests of justice and required for the welfare of the juvenile.
Nevertheless, the majority concludes that the Legislature intended to retain a juvenile court’s authority under section 782 to dismiss a section 602 petition even in the narrow situation governed by section 733(c). The majority reasons that such traditional discretion must be preserved to accommodate the narrow time constraints governing juvenile delinquency proceedings, which can hinder informed prosecutorial choices and inappropriately immunize from a DJF commitment a juvenile who quickly admits at his or her detention hearing a new petition containing a DJF-ineligible offense after an earlier sustained petition made him or her DJF eligible. Again, I cannot agree. The statutory timelines for investigating, filing, hearing, and ruling on a juvenile’s alleged commission of a criminal offense are not so short as to cause absurd results under a strict construction of section 733(c). Care must simply be taken up front to consider what is most appropriate for each minor; care that is already presumed in the statutory scheme for juvenile delinquency wardship proceedings.
Specifically, probation officers already have a statutory duty to “immediately” investigate the circumstances of a juvenile who is detained based on allegations of the commission of a criminal offense. (§ 628, subd. (a).) Such investigation logically must include a review of the juvenile’s history of juvenile court proceedings in order for the probation officer to properly decide whether or not to send an affidavit to the prosecuting attorney recommending commencement of section 602 proceedings. (§§ 652, 653.5, *426 subds. (b) & (c).) And before filing a section 602 petition alleging a felony offense or as soon as possible after filing, the prosecuting attorney must also review the minor’s file to determine if the minor is eligible for deferred entry of judgment under section 790. (§§ 628, subd. (a), 790, subd. (b); Cal. Rules of Court, rule 5.800(b).) Because a determination of eligibility for deferred entry of judgment depends, in part, on the minor’s history of juvenile court proceedings (§ 790, subd. (a)), a prosecuting attorney undertaking such investigation will presumably uncover at the same time the information necessary to determine the minor’s DJF eligibility. Thus, the statutory scheme contemplates an informed decision by a probation officer and a prosecuting attorney to pursue the matter by filing a section 602 petition or by filing a notice of probation violation pursuant to section 777.
Moreover, although section 657, subdivision (b), provides that a minor “may” admit the allegations of a section 602 petition at his or her detention hearing, I am unaware of any authority requiring the juvenile court to accept a proffered admission at that time, particularly in a situation in which the prosecuting attorney or probation officer informs the court that further investigation is necessary. The juvenile court may put over consideration of the acceptance of the minor’s admission until the jurisdictional hearing, which must be set within 15 judicial days from the date of the detention order. (§ 657, subd. (a)(1).) And, nothing prevents the court from inquiring of the minor and his or her counsel whether the minor has previously committed a DJF-eligible offense in order for the court to consider the best resolution of the matter.
Thus, it is reasonable to assume that by the time a minor has admitted or been found by the court to have committed a criminal offense alleged in a section 602 petition, it has been determined by the probation officer, the prosecuting attorney and the juvenile court that it is appropriate for the court to exercise or continue jurisdiction over the minor based on the currently alleged offense or offenses with the concomitant restriction of potential dispositional options.
With guidance from this court regarding the consequences of mistakenly filing and sustaining a new section 602 petition that alleges DJF-ineligible offenses, probation officers and prosecuting attorneys in the future would be more careful to fully investigate a juvenile’s record and not to file a new section 602 petition alleging DJF-ineligible offenses in situations where the minor is DJF eligible under an earlier sustained petition and where a DJF commitment may be recommended. The probation officer and prosecuting attorney would be more careful to alert the juvenile court to the minor’s history of juvenile court proceedings and the court would be more cautious in accepting admission of the jurisdictional allegations of a new section 602 *427 petition alleging DJF-ineligible offenses. Careful prosecutorial investigation and an occasional delay in jurisdictional hearings within the statutorily allotted time to accommodate such investigation would not discourage early resolution of delinquency matters. (See maj. opn., ante, at p. 412.) It would discourage only careless filings and inappropriate haste in some small number of proceedings. In any event, the residual possibility of a prosecutorial mistake does not justify ignoring the plain language of section 733(c).
The 2007 legislation, of which sections 731(a)(4) and 733(c) are a part, represents a fundamental shift in policy by the Legislature from treating juvenile offenders at the state level (DJF) to treating the vast majority of juvenile offenders at the local county level. Given the very specific language chosen by the Legislature in section 733(c), I continue to believe an interpretation that limits the juvenile court’s discretion better aligns with the Legislature’s preference for local commitments. I would apply sections 731(a)(4) and 733(c) according to their plain terms. I would harmonize section 782 with these statutes by recognizing that juvenile courts continue to have broad discretion to use their dismissal authority under section 782 except they may not use section 782 to make a minor who is ineligible for a DJF commitment under section 733(c) eligible for such commitment. I would affirm the judgment of the Court of Appeal that concluded the juvenile court’s dismissal here was statutorily unauthorized.
Kennard, J., and Liu, J., concurred.
Appellant’s petition for a rehearing was denied October 31, 2012. Kennard, J., was of the opinion that the petition should be granted.

 All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

 Such dismissal discretion would extend to the possible striking of individual counts alleging DJF-ineligible offenses. Thus, if a minor committed a crime spree that included DJF-eligible offenses, but the offense committed last in time was a DJF-ineligible offense, the juvenile court might, in an appropriate case, dismiss the allegations regarding the last offense in order to clearly preserve a DJF-dispositional option.

 Section 782 differs from Penal Code section 1385 in that section 782 requires a dismissal to be both in “the interests of justice” and that “the welfare of the minor requirefs] such dismissal . . .” or “that the minor is not in need of treatment or rehabilitation.” Nevertheless, with respect to its status as statutory authorization for dismissals and its requirement that a dismissal must be “in furtherance of justice,” case law regarding Penal Code section 1385 may provide useful insight. (See V.C., supra, 173 Cal.App.4th at p. 1464; accord, In re Juan C. (1993) 20 Cal.App.4th 748, 752 [24 Cal.Rptr.2d 573]; Derek L. v. Superior Court (1982) 137 Cal.App.3d 228, 233 [186 Cal.Rptr. 870].) Such case law makes it clear that the judicial authority to dismiss a case or strike a sentencing allegation under Penal Code section 1385 may be eliminated by the Legislature even without an express reference to section 1385 if there is a clear legislative direction to that effect. (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 518-519 [53 Cal.Rptr.2d 789, 917 P.2d 628]; People v. Thomas (1992) 4 Cal.4th 206, 211 [14 Cal.Rptr.2d 174, 841 P.2d 159]; People v. Tanner (1979) 24 Cal.3d 514, 519 [156 Cal.Rptr. 450, 596 P.2d 328].) The same principle should be applicable to section 782.