Filed 11/18/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G047603 |
|      v. | (Super. Ct. No. 11CF2494) |
| MARTIN CONTRERAS, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila Hanson, Judge. Affirmed and remanded with directions to resentence.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury found defendant guilty of domestic battery resulting in a traumatic condition, a felony (Pen. Code, § 273.5, subd. (a)),[1] and misdemeanor assault (§ 240).  In a bifurcated proceeding, the court found true that defendant was previously convicted of two prior strikes (§§ 667, subds. (d), (e)(2)(A), 1170.12, subd. (b)(C)(2)(A)), both of which were robberies (§ 211), and three prison priors (§ 667.5, subd. (b)).  The court struck the prison priors and sentenced defendant to an indeterminate prison term of 25 years to life pursuant to the "Three Strikes" law then in effect.

This appeal concerns only defendant's sentencing.  Less than one month after defendant was sentenced, and thus before the judgment was final, the California electorate approved Proposition 36, the Three Strikes Reform Act of 2012 (Reform Act), which provides that, with certain exceptions, a three strike term of 25 years to life may be imposed only if defendant's current offense is a serious or violent felony.  Domestic battery resulting in a traumatic condition is not deemed a serious or violent felony.  (see §§ 667.5, subd. (c), 1192.7, subd. (c).)  Defendant contends that under the analysis set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), the more lenient sentencing change applies retroactively to defendant and he is entitled to be resentenced.  We agree and remand for resentencing.

Defendant also contends his presentence conduct credits for time served should have been calculated under the amendment to section 4019, effective October 1, 2011, which provides a one-for-one ratio of time served to credit, as opposed to the previous one-for-two ratio.  We disagree.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

DISCUSSION

*Defendant is Entitled to Resentencing Under the Amended Three Strikes Law*

"On November 6, 2012, voters approved the Reform Act, and it went into effect the next day. [Citation.] The Reform Act amended the Three Strikes law so that an indeterminate term of 25 years to life in prison is applied only where the 'third strike' conviction is a serious or violent felony, or where the prosecution pleads and proves other specific factors." (*People v. Wortham* (Oct. 24, 2013, A138769) ___ Cal.App.4th ___ [2013 Cal. App. LEXIS 850].) If the third strike conviction is not serious or violent, the defendant is sentenced as if it were a second strike, i.e., double the usual punishment. (§§ 667, subds. (e)(1), (e)(2)(C), 1170.12, subds. (c)(1), (c)(2)(C).)

Defendant was sentenced on October 19, 2012, just 19 days prior to the effective date of the Reform Act. The issue on appeal is whether the Reform Act operates retroactively in favor of defendants who have been sentenced prior to the effective date but whose judgments are not yet final. (See *In re N.D.* (2008) 167 Cal.App.4th 885, 891 ["Cases in which judgment is not yet final include those in which a conviction has been entered and sentence imposed but an appeal is pending when the amendment becomes effective."].) Courts of Appeal are split on the issue, and the California Supreme Court has taken it up. (*People v. Lewis* (2013) 216 Cal.App.4th 468, review granted Aug. 14, 2013, S211494 [holding the Reform Act applies retroactively]; *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted Aug. 14, 2013, S211275 [holding the Reform Act is not retroactive]; *People v. Yearwood* (2013) 213 Cal.App.4th 161, 167 (*Yearwood*) [not retroactive]; *People v. Lester* (2013) 220 Cal.App.4th 291, 304 (*Lester*) [same, but with a dissent].)

All agree the starting point in the analysis is *Estrada*, which is where we begin. In *Estrada* the defendant pleaded guilty to escape from a prison without force or violence in violation of section 4530. (*Estrada*, *supra*, 63 Cal.2d at pp. 742-743.) At the

3

time he committed the crime, the applicable sentencing guideline provided for a minimum two-year sentence. After he committed the crime, but before he was sentenced, the guideline was amended to reduce the applicable minimum to six months. (*Id.* at p. 743.) The court framed the issue as follows: "A criminal statute is amended after the prohibited act is committed, but before final judgment, by mitigating the punishment. What statute prevails as to the punishment — the one in effect when the act was committed or the amendatory act?" (*Id.* at p. 742.) Answer: the amendatory act. "If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies." (*Id.* at p. 744.) The court analyzed the issue as follows:

"The problem, of course, is one of trying to ascertain the legislative intent — did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors.

"There is one consideration of paramount importance. It leads inevitably to the conclusion that the Legislature must have intended, and by necessary implication provided, that the amendatory statute should prevail. When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that

4

the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.* at pp. 744-745.)

The exception to this rule is "where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793.)

Here, the Reform Act contains no express saving clause, and the People concede that the Reform Act lessened the punishment for defendant's crime. If the analysis ended there, it would be beyond dispute that, under *Estrada*, defendant would be entitled to resentencing.

In addition to lessening the punishment for most three-strike offenses, however, "[t]he Reform Act also added section 1170.126, which allows inmates sentenced under the previous version of the Three Strikes law to petition for a recall of their sentence if they would not have been sentenced to an indeterminate life sentence under the Reform Act. [Citation.] An inmate is eligible for resentencing if various criteria are met, including that the inmate's commitment offense was not a serious or violent felony." (*People v. Wortham*, *supra*, ___Cal.App.4th at p. ___ [2012 Cal. App. LEXIS at pp **2-3].) The trial court has discretion to deny resentencing if it finds the defendant "would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

Section 1170.126 does not have an express saving clause. Nonetheless, the courts finding the Reform Act prospective only have reasoned the section 1170.126 petition procedure is the "functional equivalent" of a saving clause. (*Yearwood, supra*, 213 Cal.App.4th at p. 172; *Lester*, *supra*, 220 Cal.App.4th at pp. 303, 309.) We disagree.

We begin with the language of section 1170.126, the best indicator of the electorate's intent. Section 1170.126, subdivision (k), states, "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." In other words, section 1170.126 was not meant to be an exclusive remedy.

5

The *Yearwood* court came to the opposite conclusion: "The voters intended a petition for recall of sentence to be the sole remedy available under the Act for prisoners who were serving an indeterminate life sentence imposed under the former three strikes law on the [Reform] Act's effective date without regard to the finality of the judgment." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 172.) These statements appear to us to be irreconcilable, and the statutory language must prevail. The *Yearwood* court dealt with subdivision (k) as follows, "Section 1170.126[ subdivision (k)] protects prisoners from being forced to choose between filing a petition for a recall of sentence and pursuing other legal remedies to which they might be entitled (e.g., petition for habeas corpus). Section 1170.126[ subdivision (k)] does not have any impact in determining if amended sections 667 and 1170.12 operate retroactively." (*Yearwood*, at p. 178.) But nothing in that subdivision suggests it is limited to deciding between a section 1170.126 petition and a habeas petition. The statute refers to "*any* rights or remedies." (*Id.*, subd. (k), italics added.) The right to be resentenced under *Estrada* is a "right[] or remed[y] otherwise available to the defendant" (§ 1170.126, subd. (k)) where the judgment is not final. In our view, the analysis should end right there. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 ["If the statutory language is clear and unambiguous our inquiry ends"].)

But even if we look to the purposes of the Reform Act, they are served by applying *Estrada*. "The Act's proponents advanced six arguments in favor of the Act in the Voter Information Guide. The argument headings were titled: (1) 'make the punishment fit the crime'; (2) 'save California over $100 million every year'; (3) 'make room in prison for dangerous felons'; (4) 'law enforcement support'; (5) 'taxpayer support'; and (6) 'tough and smart on crime.'" (*Yearwood*, *supra*, 213 Cal.App.4th at p. 171.) The electorate was concerned that 25-year-to-life sentences for non-violent, non-serious offenses were unfair, the prisons were overcrowded, and the prisons were too expensive. All of these concerns support retroactive application of the Reform Act.

The *Yearwood* court supported its conclusion by emphasizing the public safety purpose of the Reform Act: "Enhancing public safety was a key purpose of the [Reform] Act" (*Yearwood, supra*, 213 Cal.App.4th at p. 175), and then concluded, "Giving amended sections 667 and 1170.12 prospective-only application supports the [Reform] Act's public safety purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison due to the [Reform] Act." (*Id*. at p. 176.) The only public safety argument advanced in support of the Reform Act, however, was that, due to the current state of prison overcrowding, violent criminals are being released early. The Reform Act would address that concern, the argument goes, by letting criminals whose third strike was non-serious and non-violent out earlier, thus making room for more violent criminals. (*Yearwood*, at p. 171.) From this it is clear the *Yearwood* court's logic was flawed: keeping the sort of prisoners who qualify for the Reform Act in prison longer *defeats*, not serves, the Reform Act's public safety purpose because it furthers prison overcrowding, leading to the release of more violent criminals. Thus the purposes of the Reform Act support retroactive application.

The *Yearwood* court also reasoned that application of *Estrada* would pose an unreasonable public safety risk: "If amended sections 667 and 1170.12 are given retroactive application, prisoners in appellant's procedural posture would be entitled to automatic resentencing as second strike offenders without any judicial review to ensure they do not currently pose an unreasonable risk of danger to public safety. . . . It would be inconsistent with the public safety purpose of the [Reform] Act to create a loophole whereby prisoners who were sentenced years before the [Reform] Act's effective date are now entitled to automatic sentencing reduction even if they are currently dangerous and pose an unreasonable public safety risk." (*Yearwood, supra*, 213 Cal.App.4th at p. 176.)

But the *Yearwood* court's argument goes too far; it is an argument against the Reform Act itself. What *Yearwood* describes as a "loophole" is precisely how the Reform Act works. At least in its *prospective* application, the Reform Act reduces

7

sentences without any judicial discretion to lengthen the sentence based on a judge's determination of dangerousness, even though the defendant has often spent significant presentence time in prison, and potentially developed a record of misbehavior there. Whatever the merits of the *Yearwood* court's concerns, therefore, the electorate was not persuaded. Further, to the extent *Yearwood* was concerned a defendant may have committed additional criminal conduct after sentencing but before the judgment has become final, the defendant can be tried and punished accordingly. There is no need to impose a 25-year-to-life sentence.

The recently published decision, *Lester*, *supra*, 220 Cal.App.4th 291, likewise concluded the Reform Act is prospective only.

The *Lester* court reasoned that, based on arguments in the voter information guide, the electorate *impliedly* addressed application of the Reform Act to nonfinal judgments and rejected retroactive application: "The voter information guide for the initiative stated, 'This measure reduces prison sentences served under the three strikes law by certain third strikers whose *current offenses* are nonserious, non-violent felonies. The measure also allows resentencing of certain third strikers who are *currently serving life sentences* for specified nonserious, non-violent felonies. . . . [¶] . . . [It] requires that an offender who has two or more prior serious or violent felony convictions and whose *new offense* is a nonserious, non-violent felony receive a prison sentence that is twice the usual term for the new offense, rather than a minimum sentence of 25–years–to–life as is currently required. . . . [¶] . . . [¶] . . . [It] allows certain third strikers to apply to be resentenced by the courts. . . . The court would be required to resentence eligible offenders unless it determines that resentencing the offenders would pose an unreasonable risk to public safety. In determining whether an offender poses such a risk, the court could consider any evidence it determines is relevant, such as the offender's criminal history, behavior in prison, and participation in rehabilitation programs. [It] requires resentenced offenders to receive twice the usual term for their *most recent*

8

*offense* instead of the sentence previously imposed.  Offenders whose requests for resentencing are denied by the courts would continue to serve out their life terms as they were originally sentenced.'  [Citation.]   In describing the correctional savings engendered by the initiative, the analysis stated, '[It] would reduce state prison costs in two ways.  First, fewer inmates would be incarcerated for life sentences under the three strikes law because of the measure's provisions requiring that such sentences be applied only to third strikers whose *current offense* is serious or violent.  This would reduce the sentences of some *future felony offenders.*  Second, the resentencing of third strikers could result in many existing inmates receiving shorter prison sentences.'  [Citation.]  We note the distinction clearly drawn in the analysis between the *new offense* committed by *future felony offenders* who are subject to the new twice-the-base-term sentence and the *most recent offense* committed by *existing* inmates who have already been sentenced to a 25–year–to–life term under the old law.  The analysis could not have been more clear in its distinction between the two and nowhere is there a reference to the possibility that some existing inmates would automatically receive a twice-the-base-term sentence merely because their judgments are not yet final." (*Lester*, *supra*, 220 Cal.App.4th at p. 302.)[2]

In our view, the *Lester* court read too much into the ballot materials.  It strains credulity to suppose that the vast majority of voters knew the difference between a final and nonfinal judgment, much less had an opinion about whether the Reform Act was to apply to nonfinal judgments.  And certainly the ballot materials did not expressly address that distinction.  Rather, the ballot materials here spoke in broad strokes and generalities, as is usually the case.  It defies reality, therefore, to interpret the ballot materials as impliedly expressing an opinion on the Reform Act's application to nonfinal judgments.  What the ballot materials do convey is the electorate's belief that some three

_____

[2]     The italics in the quote from the ballot materials were added by the *Lester* court, not the voter information guide.

9

strike sentences were unfairly harsh, the prisons were overcrowded, and they were too expensive. These are the intentions that ought to inform our interpretation of whether *Estrada* applies, and they all support its application.

Next, *Lester* reasoned, "If . . . inmates with Three-Strikes-law indeterminate terms whose judgments are not yet final, are entitled to the retroactive application of amendments to the Three Strikes law that reduced indeterminate terms to determinate ones, and, thus, to have his sentence automatically reduced, there would be no purpose served by the existence of Penal Code section 1170.126, *except for inmates whose sentences were final as of November 6, 2012*." (*Lester*, *supra*, 220 Cal.App.4th at p. 301, italics added.) The italicized exception, however, represents the vast majority of defendants to whom section 1170.126 could apply. We fail to see how this renders section 1170.126 ineffective or redundant.

Finally, the *Lester* court reasoned (and the People repeat this argument here) that the Reform Act "states that a defendant who has two or more strike priors, but whose current offense is not a [serious or violent] strike, will receive a term of twice the sentence for the convicted offense unless the 'prosecution pleads and proves' a current conviction or a past conviction of specified crimes. [Citation.] As the People correctly point out, an inmate serving a Three-Strikes-law determinate term is long past the pleading and proof stage of proceedings." (*Lester*, *supra*, 220 Cal.App.4th at p. 304; see § 667, subd. (e)(2)(C)(i)-(iv).) In other words, the People may have elected not to plead and prove the strikes that disqualify a defendant from the benefit of the Reform Act, and it is too late to do so now. So, if we apply *Estrada*, some defendants who do not qualify for resentencing may receive a windfall. To similar effect: "we cannot ignore the possibility that, under the old law, in more than one case, a prosecutor has elected not to retry a defendant on one or more counts on which the jury hung because the defendant was to receive a 25-year-to-life term on another count. To have such a defendant now

have his or her sentence automatically reduced, without the safeguards of . . . section 1170.126, would undermine the purpose of the initiative." (*Lester*, at p. 304.)

We are not persuaded. Prosecutors already had sufficient incentive to plead and prove as many prior strikes as possible, and thus we are confident the present appellate record is sufficient to determine whether the defendant would have qualified for a shorter sentence under the Reform Act. Strikes are subject to being stricken on the court's own motion in the interest of justice. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 518; § 1385.) Thus prosecutors already had an incentive to plead and prove as many strikes as possible to avoid or mitigate the effect of strikes being stricken. They were especially incentivized to plead and prove the egregious disqualifying strikes that would disqualify a defendant from the benefits of the Reform Act, as such strikes are more likely to persuade a judge that striking a strike would not serve the interests of justice.[3] Further, each strike resulting in a prison term would be a "prison prior" under section 667.5, which is another incentive prosecutors had to plead and prove additional

---

[3] The disqualifying strikes include: "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code. [¶] (II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289. [¶] (III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288. [¶] (IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive. [¶] (V) Solicitation to commit murder as defined in Section 653f. [¶] (VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245. [¶] (VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418. [¶] (VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv).)

11

prior strikes.  In short, we are persuaded the prosecutor does not need a second bite at the apple to plead and prove relevant prior strikes.[4]

The same is even more true of current offenses which resulted in a hung jury, and which the prosecutor decided not to retry.  As we well know, any conviction is subject to being overturned on appeal.  If a prosecutor elected not to retry the hung count, often it will be because the evidence is not strong enough.  But if it was simply a desire not to do extra work, we feel no obligation to interpret the law around such decisions.

In sum, we find no indication in the Reform Act that the electorate intended it solely to operate prospectively.  Accordingly, under *Estrada* the Reform Act applies retroactively to all non final judgments, and defendant is entitled to be resentenced.

*Defendant's Conduct Credits Were Appropriately Calculated Under Former Section 4019; Defendant is Entitled to Two Additional Days of Credit*

Defendant's presentence conduct credits were calculated under former section 4019, which provided for conduct credit at a ratio of one day credited for every two days actually served.  The Criminal Justice Realignment Act of 2011 amended section 4019 to more generously award conduct credits at a ratio of one to one — double the prior rate.  The amendment added subdivision (h), which states the more generous

---

[4] We note that *Lester* did not address whether *People v. Figueroa* (1993) 20 Cal.App.4th 65 ameliorates its concern by permitting the People to hold an additional evidentiary hearing on remand to prove disqualifying strikes.  In *Figueroa* the defendant was given a three-year sentencing enhancement for drug trafficking near school yards.  After his conviction, the relevant statute was amended to add an additional requirement for the enhancement to apply.  (*Id.* at p. 69.)  The court held that, under *Estrada*, the amendment applied retroactively.  But during the trial, the People had no occasion to present evidence on the additional requirement.  (*Figueroa*, at p. 70.)  Therefore, the *Figueroa* court held that the defendant was only *potentially* entitled to the benefit of the amended statute, and remanded to the trial court for an additional evidentiary hearing to make that determination.  (*Id.* at pp. 71-72.)  *Figueroa* at least arguably contradicts the *Lester* court's premise that it is too late now to plead and prove disqualifying strikes.  Neither party has briefed the issue here, however, and thus we decline to decide whether *Figueroa* would apply.

formula "shall apply prospectively and shall apply to prisoners who are confined . . . for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." Defendant was arrested on September 12, 2011.

Defendant raises two issues on appeal. First, defendant contends subdivision (h) of section 4019 is ambiguous, and that, applying the rule of lenity, we should interpret it to apply the more generous formula to all of defendant's days served after October 1, 2011, even though he committed his crime prior to that date. Second, he contends interpreting subdivision (h) of section 4019 to exclude defendant's time in custody after October 1, 2011, violates his constitutional right to equal protection.

As defendant recognizes, this court recently rejected both of these arguments in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42. Defendant explains, "Appellant raises these arguments for purposes of preservation and to petition for review in the California Supreme Court." Defendant has done little more than register his disagreement with *Rajanayagam*, and thus he has not offered any persuasive reason for us to depart from it. Accordingly, we hold *Rajanayagam* is controlling and affirm the trial court's calculation of defendant's conduct credits under former section 4019.

We note, however, that both parties agree the trial court miscalculated defendant's *actual* time in presentence custody. The trial court calculated 401 days between September 12, 2011, and October 19, 2012, when in fact there were 404 days in that period.

13

DISPOSITION

The judgment of conviction is affirmed, but the matter is remanded to the trial court with directions to resentence defendant pursuant to the current versions of sections 667, subdivision (e)(1), (e)(2)(C) and 1170.12, subdivision (c)(1), (c)(2)(C), and to grant 606 days of presentence custody credits.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

FYBEL, J.

14