[No. A125867. First Dist., Div. Four. June 3, 2010.]

In re D.J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
D.J., Defendant and Appellant.

## Counsel

Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RUVOLO, P. J.**—Appellant contends that the juvenile court's action in committing him to the Division of Juvenile Justice[1] was statutorily unauthorized under Welfare and Institutions Code section 733, subdivision (c) (section 733(c)), because the most recent offense alleged in a petition admitted or found to be true against appellant was not a DJJ-eligible offense—that is, an offense for which DJJ commitment is authorized under Welfare and Institutions Code section 707, subdivision (b) (section 707(b)). We conclude that the last offense alleged in a petition, and admitted by appellant, was robbery. Properly construed, the subsequently filed charging documents alleging probation violations against appellant using mandatory Judicial Council forms were not "petitions" within the meaning of section 733(c). Because robbery is a DJJ-eligible offense under section 707(b), we reject appellant's contention, and affirm the juvenile court's order.

---

[1] Effective July 1, 2005, the correctional agency formerly known as the California Youth Authority (CYA) became known as the Division of Juvenile Facilities (DJF). DJF is part of the Division of Juvenile Justice, which in turn is part of the Department of Corrections and Rehabilitation. (Welf. & Inst. Code, § 1710, subd. (a); Pen. Code, § 6001; Gov. Code, §§ 12838, subd. (a), 12838.3, 12838.5, 12838.13.) Statutes that formerly referred to CYA, such as Welfare and Institutions Code sections 731 and 733, now refer to DJF. The parties to this appeal, however, refer to the authority to which appellant was committed as the Division of Juvenile Justice, or DJJ. We will do likewise.

## FACTS AND PROCEDURAL BACKGROUND

### A. Petitions Filed in 2007

Appellant was born in 1992. The delinquency proceedings against him, which had a lengthy history before culminating in this appeal, began when appellant was 13 years old.[2] On January 3, 2007, the prosecution filed a new petition (the January 2007 petition) against appellant, alleging that on or about December 30, 2006, appellant committed robbery (Pen. Code, § 211) while armed with a BB gun (Pen. Code, § 12022, subd. (b)). On January 4, 2007, appellant admitted the robbery count in the January 2007 petition, and the arming allegation was dismissed. On March 23, 2007, the juvenile court approved appellant's placement at a behavior modification program in Southern California called Boys Republic.

On April 17, 2007, the prosecution filed another petition (the April 2007 petition), alleging that on or about December 17, 2006, appellant committed two felonies: robbing a pizza delivery person (Pen. Code, § 211), and assaulting the same victim with a weapon (appellant's hands and feet) by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)). On April 18, 2007, appellant admitted the robbery count, and the assault count was dismissed with facts and restitution open. Appellant's previous disposition was continued.

### B. Charging Documents Filed in 2008 and 2009

On December 17, 2008, the prosecution filed a document (the December 2008 charging form)[3] on the 2006 version of the standard Judicial Council juvenile wardship petition form (form JV-600). The December 2008 charging form bore checks in the boxes indicating that it was filed under Welfare and Institutions Code section 602, subdivision (a) (section 602(a)). It also stated, in the blank labeled "Validation [*sic*] (*specify code section*)"[4] that it was a

---

[2] Much of appellant's juvenile court record is not directly relevant to the issue addressed by this appeal. Suffice it to note that four delinquency petitions were filed against appellant between June and September 2006, alleging that appellant committed numerous offenses, including seven felonies. All of these petitions were resolved by a disposition order filed on November 14, 2006, directing that appellant be committed to a suitable out-of-home placement.

[3] As will appear from our discussion, *post*, the pivotal question posed by this appeal is whether the document in question is properly characterized as a "petition" as that term is used in section 733(c). For purposes of reciting the procedural history of this case, we refer to this document, and to the similar documents filed later, as "charging forms."

[4] The word "validation" appears to have been a typographical error on the form. The current version of Judicial Council form JV-600, which was revised effective January 1, 2008, uses the term "violation" in the same location.

supplemental petition under Welfare and Institutions Code section 777, subdivision (a) (section 777(a)). An attachment page, prepared on Judicial Council form JV-620 and labeled "Notice of W&I Section 777(a) Petition" (original capitalization omitted), stated that the prosecution was seeking an order under section 777(a), modifying the order granting appellant probation, on the ground that appellant had violated the probation condition that he obey the law, by committing a residential burglary on December 16, 2008.

On January 7, 2009, the prosecution filed another document (the January 2009 charging form), on the current version (eff. Jan. 1, 2008) of Judicial Council form JV-600, again bearing checks in the boxes indicating that it was filed under section 602(a). In the space for "[v]iolation," the form stated that it was a first amended supplemental petition under section 777(a). The attachment page, labeled "First Amended Notice of W&I Section 777(a) Petition" (original capitalization omitted), alleged that appellant had committed an additional attempted residential burglary, at a different address, on the same date (Dec. 16, 2008) as the burglary alleged in the December 2008 charging form. As in the December 2008 charging form, the prosecution requested that the existing probation order be modified on the ground that appellant had violated the terms of his probation.

On January 7, 2009, appellant admitted violating section 777(a) as charged in the December 2008 and January 2009 charging forms. At the disposition hearing on these charges, the juvenile court ordered that appellant be placed in a suitable foster home, private institution, group home, or county facility. Appellant was then placed at a program called Rite of Passage, but left the program the day after he arrived.

On February 25, 2009, the prosecution filed another document (the February 2009 charging form), again on the 2008 version of Judicial Council form JV-600; with the section 602(a) boxes checked; and specifying that the violation charged was under section 777(a). This time, however, the attachment to the form was on Judicial Council form JV-720, which is labeled "Supplemental Petition for More Restrictive Placement (Attachment)" (original capitalization omitted). It alleged that appellant had left Rite of Passage on February 22, 2009, and that his whereabouts were unknown. It requested that the court issue a warrant for appellant's arrest.

On May 5, 2009, appellant was arrested on the basis of the warrant issued in response to the February 2009 charging form. On May 14, 2009, appellant admitted that he had violated section 777(a) as alleged in the February 2009 charging form, and a disposition hearing was set for May 29, 2009.

On May 28, 2009, the day before the scheduled disposition hearing, the prosecution filed a document (the May 2009 charging form), again on Judicial Council form JV-600 with the section 602(a) boxes checked, and again stating that it was a supplemental petition under section 777(a). The attachment, on form JV-620, had the caption "Notice of W&I Section 777(a) Petition" (original capitalization omitted) typed in. It asserted that appellant had violated the probation condition requiring that he obey the law, in that (1) when appellant was arrested on May 5, 2009, he was in possession of stolen property (Pen. Code, § 496), and (2) appellant committed vandalism (Pen. Code, § 594, subd. (b)(1)).[5]

At a hearing on May 29, 2009, the juvenile court dismissed the charge of violating section 777(a) alleged in the May 2009 charging form. The court found true the section 777(a) violation alleged in the February 2009 charging form. The court then made a finding under Welfare and Institutions Code section 726, subdivision (a), that appellant had been tried on probation while in custody and had failed to reform, and that appellant would probably benefit from being committed to DJJ. The findings ended with a notation that "[t]hese are 707b [*sic*] offenses." (See § 707(b).) The referent of "these" was not specified. On June 12, 2009, at a hearing to review appellant's placement and calculate his credit for time served, the order entered May 29, 2009, was corrected to make clear that appellant was being committed to DJJ.

On June 15, 2009, appellant's counsel applied for rehearing as to appellant's commitment to DJJ. The request for rehearing was denied on July 7, 2009.

On July 2, 2009, the juvenile court entered an order formally committing appellant to DJJ, and citing the January 2007 and April 2007 petitions as sustained petitions involving offenses covered under section 707(b), i.e., robbery (Pen. Code, § 211). Appellant filed a notice of appeal on August 6, 2009, and an amended notice of appeal on August 21, 2009.

---

[5] The vandalism charge was based on appellant's having kicked, ripped, and torn an inside door panel in the police car that transported him to juvenile hall after his arrest.

## DISCUSSION

### A. Statutory Framework

#### 1. Sections 733(c) and 707(b): Limitations on DJJ Commitment

Section 733(c) was enacted in 2007, with the purpose of reducing the number of juveniles committed to DJJ for nonviolent, nonserious offenses. (See *V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, 1468–1469 [93 Cal.Rptr.3d 851].) As relevant here, the statute provides: "A ward of the juvenile court who meets any condition described below shall *not* be committed to the [DJJ]: [¶] . . . [¶] (c) The ward has been or is adjudged a ward of the court pursuant to [Welfare and Institutions Code section] 602, and the *most recent offense alleged in any petition* and admitted or found to be true by the court is *not* described in subdivision (b) of [Welfare and Institutions Code section] 707 . . . ." (Italics added.) The effect of the statute is to preclude DJJ commitment unless the minor's most recent sustained petition charged the minor with one of the crimes enumerated in section 707(b).

Section 707(b) itemizes a number of specific criminal offenses, which we refer to simply as DJJ-eligible offenses. These offenses include robbery (§ 707(b)(3)) and assault by means of force likely to produce great bodily injury (§ 707(b)(14)).

#### 2. Section 777: Juvenile Probation Revocation

■ Welfare and Institutions Code section 777 (section 777) governs the juvenile court equivalent of probation revocation proceedings in adult criminal cases. As our Supreme Court has explained: "In 2000, Proposition 21 [(the Gang Violence and Juvenile Crime Prevention Act of 1998, eff. Mar. 8, 2000)] changed the scope of section 777 in [juvenile delinquency] cases. As pertinent here, voters deleted the provision allowing prosecutors to allege probation violations amounting to crimes. Now, for [juvenile] wards or probationers . . . , section 777 applies . . . [to] a probation violation 'not amounting to a crime.' (§ 777[, subd.] (a)(2).)

"With respect to procedural changes, Proposition 21 replaced the supplemental petition with a 'notice' provision. (§ 777, subds. (a)(2) & (b).) A 'preponderance of the evidence' standard now applies. (§ 777[, subd.] (c).) Other new language allows 'reliable hearsay evidence' insofar as it would be 'admissible in an adult probation revocation hearing [under] *People v. Brown* [(1989) 215 Cal.App.3d 452 [263 Cal.Rptr. 391]] and any other relevant provision of law.' (§ 777[, subd.] (c).) [Fn. omitted.]" (*In re Eddie M.* (2003)

31 Cal.4th 480, 491 [3 Cal.Rptr.3d 119, 73 P.3d 1115].) Thus, under section 777, there are significant procedural differences between a juvenile probation violation proceeding and a proceeding charging a minor with a criminal offense.

## B. Discussion

The issue posed by this appeal, regarding the application of section 733(c) in a case involving a subsequently alleged probation violation, was first addressed in *In re J.L.* (2008) 168 Cal.App.4th 43 [85 Cal.Rptr.3d 35]. In that case, the minor admitted committing a DJJ-eligible offense, i.e., assault, while on probation as a result of a number of prior juvenile delinquency proceedings. The juvenile court nonetheless continued the minor on probation, and placed him in a juvenile treatment facility. The minor later ran away from his placement and was charged with a probation violation. He was then charged with another DJJ-eligible offense (attempted robbery while armed with a knife). The minor contested the arming allegation on the attempted robbery charge, and the prosecution successfully moved to dismiss the petition charging the attempted robbery. The juvenile court then found that the minor had committed the charged probation violation, and committed him to DJJ based on the original assault charge.

The minor appealed, arguing that he was not eligible for DJJ commitment under section 733(c) because his most recent offense was a probation violation, not a section 707(b) crime. The appellate court concluded that a violation of probation alleged in a section 777 notice "does not constitute an offense alleged in a 'petition' within the meaning of section [733(c)]." (*In re J.L., supra*, 168 Cal.App.4th at p. 61.) The court reasoned that Proposition 21 transformed section 777 into a probation violation procedure, as opposed to one in which a criminal offense can be alleged. (168 Cal.App.4th at p. 59.) It concluded that "[i]n view of the different procedures in a proceeding under [Welfare and Institutions Code] section 602 as compared to a proceeding under section 777, including that the former is initiated by a petition while the latter is initiated by a notice, and the constitutional distinctions between alleging that a crime has been committed as compared to alleging that probation has been violated, we conclude that the reference to a 'petition' in section [733(c)] refers to a petition that is filed under section 602 but not [to] a notice filed under section 777." (*Id.* at p. 60.) Thus, the court held that the minor's "most recent offense *alleged in any petition* and admitted or found to be true by the court" (§ 733(c), italics added) was not the probation violation, but the original assault. It therefore affirmed the order committing the minor to DJJ.

A second published opinion addressing section 733(c), and following the rationale used by the court in *In re J.L., supra*, 168 Cal.App.4th 43, is

*In re M.B.* (2009) 174 Cal.App.4th 1472 [95 Cal.Rptr.3d 359]. In this second case, the minor admitted committing a non-DJJ-eligible offense and was placed on probation in 2006. Later in 2006, while the minor was on probation, he was charged in a single document both with a DJJ-eligible offense (assault), and with violating his probation. The juvenile court found the charges true, continued the minor's probation, and placed him in a local facility. Then, in 2008, the minor was charged with another probation violation not amounting to a crime. The juvenile court found the allegation true, and committed the minor to DJJ.

█ On appeal, the minor argued that his most recent offense was the 2008 probation violation, not the 2006 assault, and that he therefore could not be sent to DJJ. The appellate court disagreed, reasoning that the Legislature's purpose in enacting section 733 was "to reduce the cost and increase the effectiveness of juvenile confinement by shifting all but the most serious juvenile offenders to county facilities. [Citation.]" (*In re M.B., supra,* 174 Cal.App.4th at p. 1477.) "This purpose," the court concluded, "does not support the view that those who commit the offenses the Legislature deemed serious enough for [DJJ] must not be confined there if they first get probation but then violate its terms." (*Ibid.*) In order to avoid this result, the court "interpret[ed] the word 'offense' in section 733 to exclude a violation of probation found pursuant to section 777, subdivision (a)(2)." (*Id.* at pp. 1477–1478.) On this basis, the court affirmed the minor's commitment to DJJ on the basis of the 2006 assault.

█ The holdings of these cases are fully applicable to the facts here. The last petition alleging a DJJ-eligible offense against appellant was the April 2007 petition, which alleged both robbery (Pen. Code, § 211), and assault with a weapon (appellant's hands and feet) by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)). Appellant admitted the robbery count, which is listed in section 707, subdivision (c) as a DJJ-eligible offense.

The charging documents filed in 2008 and 2009 did not seek an adjudication that appellant had committed new offenses. Rather, their purpose was to initiate proceedings under section 777, alleging the crimes only as violations of appellant's probation, like the similar subsequent filings in both *In re J.L., supra,* 168 Cal.App.4th 43, and *In re M.B., supra,* 174 Cal.App.4th 1472. Although appellant admitted the probation violations, they did not supersede the DJJ-eligible robbery count admitted by appellant in April 2007.

*V.C. v. Superior Court, supra,* 173 Cal.App.4th 1455, upon which appellant primarily relies, is factually distinguishable. In that case, the minor was charged by petition (the 2005 petition) with committing a DJJ-eligible

offense, and was granted probation. While on probation, the minor was charged in a subsequent petition (the 2007 petition) with three new offenses, one of which was DJJ-eligible, and two of which were not. The minor entered into a plea bargain under which he admitted one of the offenses that was not DJJ-eligible, and the others were dismissed. He was again granted probation, and was placed in a group home and ordered to participate in a treatment program. The prosecution *later* filed a notice under section 777 charging the minor with violating his probation by disobeying the staff at his group home and failing to participate in the treatment program. Seeking to render the minor eligible for a commitment to DJJ, the prosecution moved to dismiss the 2007 petition, so that it could seek DJJ commitment based on the offenses charged in the 2005 petition. The juvenile court granted the motion, and dismissed the 2007 petition "in the interests of justice" under Welfare and Institutions Code section 782 (section 782).

The minor then filed a petition for writ of mandate. The appellate court concluded that the minor had entered into the plea bargain resolving the 2007 petition specifically in order to avoid DJJ commitment. As a result, it reasoned that it was a violation of due process to deprive the minor of the benefit of that bargain by dismissing the 2007 petition on the prosecution's motion in order to render the minor eligible for DJJ commitment based on the 2005 petition. Thus, the court concluded that the juvenile court was not acting in the interests of justice, as required by section 782, when it dismissed the 2007 petition. (*V.C. v. Superior Court, supra*, 173 Cal.App.4th at pp. 1465–1468.)

This last case is far different factually than *In re J.L., supra*, 168 Cal.App.4th 43, *In re M.B., supra*, 174 Cal.App.4th 1472, and the present case. Here, there was not a prior adjudication of a non-DJJ-eligible offense entered under Welfare and Institutions Code section 602 (section 602) that the prosecution sought to vacate "in the interests of justice," so as to revive an earlier adjudication of a DJJ-eligible crime.[6] Thus, *V.C. v. Superior Court, supra*, 173 Cal.App.4th 1455 is inapplicable.

Our holding is consistent not only with existing case law interpreting sections 733(c) and 777, but also both with the language and with the intent of the applicable statutes. Specifically, we agree with the court in *In re M.B.* that "[t]he Legislature could not have intended that juvenile court judges be forced into a choice of either sending a DJ[J]-eligible ward to DJ[J] immediately or ordering probation and [thereby] forfeiting the threat of a DJ[J]

---

[6] As the court held in *In re J.L., supra*, 168 Cal.App.4th at pages 55–57, if a subsequent petition charging a non-DJJ-eligible offense is still *pending* at the time the matter comes before the juvenile court for disposition, that petition may be dismissed in the interests of justice in order to permit the court to commit the minor to DJJ based on an earlier sustained petition charging a DJJ-eligible offense.

commitment later if the ward violates probation." (*In re M.B., supra*, 174 Cal.App.4th at p. 1477.) Accordingly, we reject appellant's argument that it impermissibly circumvents the relevant statutes for a prosecutor to charge a non-DJJ-eligible offense as a probation violation, for the purpose of relying on a prior DJJ-eligible offense as the basis for seeking a DJJ commitment.

## C. Petition Versus Notice

There is one complication present in this case that is not discussed in the previously published cases. In this case, the prosecution used the JV-600 juvenile wardship *petition* form to charge appellant with probation violations on four separate occasions (i.e., in the Dec. 2008, Jan. 2009, Feb. 2009, and May 2009 charging forms). To compound the potential for confusion, the prosecution consistently checked the boxes on these forms indicating that they were filed under section 602(a).[7] Relying on these facts, appellant argues that *In re J.L., supra*, 168 Cal.App.4th 43, does not apply here because the December 2008 and January 2009 charging forms constituted "petitions." In other words, appellant argues that a pleading which charges a *criminal offense* as a probation violation, and which is *titled* as a petition and cites section 602, is a "petition" charging an "offense" within the meaning of section 733(c).[8]

The only one of the published cases raising a similar or related issue is *In re M.B., supra*, 174 Cal.App.4th 1472. In that case, after acknowledging the earlier holding in *In re J.L., supra*, 168 Cal.App.4th 43, the court noted that the procedural history of the two cases differed, "in that the probation violation [in *In re M.B.*] was not alleged in a freestanding section 777 notice but in a pleading titled 'JUVENILE WARDSHIP PETITION WELF & INST CODE 602/777,' in which the probation violation was alleged along with an

---

[7] With respect to the December 2008 charging form, respondent's brief states that these boxes were checked in error, and argues that the December 2008 charging form constituted a notice rather than a petition. This characterization of the December 2008 charging form finds some support in a statement in a subsequent probation report that appellant's probation officer "sent a petition" to the prosecution, and the prosecution "did not file charges for the [burglary], but filed a [section 777(a)] violation." Respondent does not explain, however, why the same form was used, and the same boxes were checked, on the three additional charging forms filed after December 2008.

[8] The prosecution's use of Judicial Council form JV-600 in the present case may have resulted from the fact that use of this form is mandatory for petitions under section 602, but there is no equivalent form for notices of probation violation proceedings under section 777. As our Supreme Court explained in *In re Eddie M., supra*, 31 Cal.4th at pages 501–502, there are significant procedural differences between a probation violation notice under section 777, and a petition under section 602. In light of the importance of these differences, we respectfully suggest that it would be appropriate for the Judicial Council to develop a form specifically designed for use as a notice of probation violation in juvenile cases under section 777.

allegation of a [non-DJJ-eligible] criminal offense . . . ." (*In re M.B., supra*, 174 Cal.App.4th at p. 1476, original capitalization.) Because the charging pleading in *In re M.B.* took that hybrid form, the court was reluctant to characterize it as a notice under section 777 rather than as a petition, remarking that "it would exalt form over substance to say the top half of the third page of [the charging] pleading, on which the criminal charge appears, is a petition, while the bottom half of that same page, on which the probation violation allegation appears, is not." (*In re M.B.*, at p. 1476.) For that reason, the *In re M.B.* court focused instead on the question whether a juvenile probation violation is an "offense" within the meaning of section 733(c).

■ Here, appellant takes the argument one step further, noting that the charging forms filed against him in 2008 and 2009 not only were titled as petitions, but also charged him with acts that not only violated his probation, but also amounted to criminal offenses.[9] In our view, however, this is a distinction without a difference. As the Supreme Court made clear in *In re Eddie M., supra*, 31 Cal.4th 480, a juvenile probation violation, charged as such, falls within the terms of section 777 even if the underlying misconduct also constituted a crime. (31 Cal.4th at p. 486.)

Moreover, it is clear from the 2008 and 2009 charging forms, taken as a whole, that the prosecution's intent was to charge appellant only with probation violations, and not with the underlying criminal offenses. Thus, the third page of the December 2008 and May 2009 charging forms, which specified the violation being charged, were each titled "NOTICE OF W&I [*sic*] SECTION 777(a) PETITION." (Original capitalization.) Similarly, the third page of the January 2009 charging form was titled "FIRST AMENDED NOTICE OF W&I [*sic*] SECTION 777(a) PETITION." (Original capitalization.) The February 2009 charging form charged appellant only with leaving his court-ordered placement without permission, and not with any act amounting to a crime. Given the absence of a Judicial Council form specifically tailored to permit the filing of a stand-alone notice under section 777, we decline to conclude, based solely on the use of the JV-600 form as the cover page and the checking of the section 602 boxes on that form, that these charging forms were petitions under section 602 rather than the notices of probation violation that the prosecution obviously intended.

---

[9] The hybrid charging document in *In re M.B.*, alleged that the minor had committed not only a probation violation (apparently one that did not also constitute a criminal act), but also a non-DJJ-eligible criminal offense (receiving a stolen vehicle). The criminal offense, however, was dismissed, leaving only the probation violation at issue. (See *In re M.B., supra*, 174 Cal.App.4th at p. 1476.)

## DISPOSITION

The juvenile court's order committing appellant to DJJ is affirmed.

Sepulveda, J., and Rivera, J., concurred.