Filed 5/31/13  In re A.C. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>        Defendant and Appellant. | A135382<br><br>(Alameda County<br> Super. Ct. No. OJ06002988) |

Minor A.C. appeals from a juvenile court dispositional order committing him to the California Department of Juvenile Facilities (DJF). He presents several arguments challenging his commitment to DJF, and requests reversal and a new dispositional hearing. We conclude the minor's contentions are without merit and do not require the requested relief. Accordingly, we affirm.

## FACTS

### I.    Background

In 2006, when the minor was 10 years old, he and his younger siblings were taken from their mother's custody and placed in foster care after a finding that their mother was unable to care for them due to her drug addiction. Three years later, in 2009, the district

attorney filed a Welfare and Institutions Code[1] section 602 petition after the 13-year-old minor was arrested for robbery and theft of a car for a "joy ride." The minor admitted to committing two offenses of possessing stolen property as an accessory, as misdemeanors (Pen. Code, §§ 32, 496). The juvenile court declared the minor a ward of the court and placed him in his grandmother's home under the formal supervision of the probation department.

On February 24, 2010, the district attorney filed a new section 602 petition, alleging the minor had committed the felony offenses of burglary (Pen. Code, § 459), auto burglary (Pen. Code, § 459), and receipt, withholding, and concealing stolen property (Pen. Code, § 496). To resolve the petition, the minor admitted to being an accessory to burglary, as a felony (Pen. Code, §§ 32, 459). The minor was continued as a ward and released on GPS monitoring to his grandmother's home. However, on April 2, 2010, the district attorney filed a section 777 supplemental petition for more restrictive placement alleging that on March 27, 2010, the minor had absconded from his grandmother's home and his whereabouts were then unknown. The police ultimately found and detained the minor on April 12, 2010. On April 14, 2010, the district attorney filed another section 602 petition alleging the minor had committed the misdemeanor offense of unlawfully possessing live ammunition (Pen. Code, § 12101, subd. (b)(1)). To resolve the petition, the minor admitted to committing the misdemeanor offense of disturbing the peace (Pen. Code, § 415). The juvenile court continued the wardship and the minor was placed in juvenile hall for about three months, during which time he was diagnosed with depression and conduct disorders and prescribed psychotropic medications. On July 6, 2010, he was released on GPS monitoring to his grandmother's home. However, about two weeks later, the minor again absconded from his grandmother's home and his whereabouts were unknown.

_____

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

On or about September 20, 2010, the minor returned to his grandmother's home. In the interim, on September 16, 2010, the district attorney filed another section 602 petition/section 777 supplemental petition, alleging that the minor had violated his probation by failing to obey all laws and be of good conduct in that between April 2010 and June 2010, a Berkeley home was burglarized and vandalized with damage in excess of $5,000, and the minor's latent prints were found inside the house. When the minor failed to appeared for a hearing on September 29, 2010, the juvenile court issued a warrant for his arrest. Thereafter, the minor was arrested and detained at Juvenile Justice Center. On December 6, 2010, the juvenile court dismissed the probation violation petition in the interest of justice. The minor was placed on GPS monitoring and returned to his grandmother's home. About one month later, the GPS monitoring was vacated after the court received a report the minor was then attending school, working at Berkeley Youth Alternatives, he had nearly completed his weekend training academy requirements, and his behavior was good at home.

## II. Proceedings Leading to DJF Commitment

On February 1, 2011, the district attorney filed a new section 602 petition, alleging that on or about January 30, 2011, the 15-year-old minor had committed a felony robbery (Pen. Code, § 211) of another minor's personal property. The petition alleged that in determining disposition and maximum length of physical confinement, the court should consider the minor's previous history. The juvenile court sustained the petition based on the minor's admission to the robbery allegation. Before the dispositional hearing, the probation department officer prepared a report, noting the robbery was a "section 707(b)(3) offense." The probation department officer reported the minor wanted to withdraw his admission because he did not commit the robbery. If the minor did not withdraw his admission, the probation department officer recommended that the minor be removed from his grandmother's home and placed in a foster care home. "The SOS Committee reservedly found the minor suitable for out of home placement, but they directed that [the minor] be screened for [DJF]. . . . Should the minor fail in placement, [DJF] will most certainly be the next step on [the minor's] path." At a hearing on

3

February 25, 2011, the matter of disposition was "[s]ubmitted on the [p]robation [r]eport, [¶] . . . [which the juvenile court] had read and considered . . . [and] admitted into evidence." The minor did not move to withdraw his admission. He was continued as a ward of the court and the probation department was directed to place him in a suitable facility.

On March 28, 2011, the probation department placed the minor in a group home, which used behavior modification techniques. The program also offered "intensive personal, and group therapy and family therapy when family is available. The wards all attend off-site community schools." As soon as the minor had completed his intake paperwork and was taken to the group home, he fled and went "AWOL." He was found by the police and taken to the Juvenile Justice Center and "booked in on a Change of Placement." The minor was re-evaluated for placement at the group home and given another opportunity at that placement. He was again placed at the group home on May 6, 2011. However, the minor did not do well. He was constantly rude and disrespectful to the staff, and he often refused to follow staff instructions if he did not want to complete a task. The minor was warned that if he continued to act negatively, his placement would be terminated. On June 23, 2011, when the minor was at an outing at the community pool, he walked away from staff, locked himself in a bathroom, and smoked marijuana. Because of this incident, the minor was terminated from the placement and returned to the probation department's custody. Thereafter, the probation department spent several months trying to find another suitable placement for the minor. On September 20, 2011, the minor was placed at Bridges Intervention, which was described as "a structured environment . . . that will provide the minor with the appropriate education services he requires. The minor will also receive individual, group and family therapy." On November 16, 2011, the probation department officer reported the minor had left the placement and remained away without permission and without notifying the probation officer. On February 1, 2012, the police took the minor into custody pursuant to an arrest warrant.

On February 2, 2012, the district attorney filed a pleading on the 2012 version of the standard Judicial Council juvenile wardship petition form (form JV-600). The section 602(a) boxes were checked, and next to the printed text, "Validation [sic] (*specify code section*):" was typed, "SUPPLEMENTAL PETITION WI [sic] 777(a)." An attachment, prepared on Judicial Council form JV-620, revised January 1, 2006 to be used for a "violation of law by child", was titled, "NOTICE OF W&I [sic] SECTION 777(a) PETITION." In that attachment, it was alleged the district attorney was seeking an order, pursuant to section 777(a), changing and modifying the previous order of the court granting the minor probation, removing the minor from the custody of his parent, guardian, or relative, and directing placement in Bridges, a group home, because the minor had violated the probation terms and conditions to obey all laws and be of good conduct, in that on February 1, 2012, he committed a residential burglary, was found in possession of the victim's property, and falsely identified himself to the police. The pleading gave notice that the district attorney would ask the court to consider the minor's previous history in determining disposition and maximum length of physical confinement.

After a three day contested jurisdictional hearing, the juvenile court found, by a preponderance of the evidence, that the minor had violated his probation based on his involvement in the criminal offenses alleged in the February 2012 petition. The juvenile court determined the minor's maximum time he might be confined in secure custody, with the terms of all previously sustained petitions known to the court aggregated, was six years and five months.

In the report prepared for the dispositional hearing, the probation department officer recommended the minor's out-of-home placement should be continued, and the department was screening the minor for placement at Rite of Passage. By that time, the then 16 year-old minor had not positively dealt with the stressors in his life: his mother's whereabouts were unknown, his father had recently died, and he had been separated from his siblings by their adoption. The minor could no longer live with his grandmother because of his involvement with "police activities around [her] residence." The minor

5

admitted to drinking alcohol and smoking marijuana at an early age, and his "recent drug appetite ha[d] escalated to cocaine." The probation department officer asserted that "[i]t is evident that [the minor] needs to learn coping skills, and grief counseling is imperative, at this time in his life. If these issues are not addressed, [the minor's] depression can spiral deeper in grief and despair."

At the commencement of the March 13, 2012 dispositional hearing, the juvenile court indicated the probation department recommended "continuing the placement order," and "[t]here's also some consideration of" DJF. The minor's counsel asked the court not to place the minor at DJF, but to place him at Rite of Passage, which would be a significant escalation from placement in a group home, and would be "significant enough to address" the minor's "particular situation." The prosecutor asked the court to consider placing the minor at DJF because he was eligible for that placement based on the prior 2011 robbery offense, he had had "plenty of chances," and he had "seriously been wreaking havoc on the Berkeley community" since October 2009. The prosecutor noted, among other things, that the minor had a serious drug problem, and he had told the probation department officer that if he was placed in another group home, he would leave and run. The prosecutor opined that Rite of Passage would not change or help the minor, and that DJF might be the only place where the minor could actually reform and rehabilitate.

The juvenile court found the minor had been tried on probation and also in placement and failed to reform. The court further found the minor's mental and physical condition and qualifications were such that he would benefit from the reformatory educational discipline and other programs provided by DJF. The court explained the minor needed "a lot of help in terms of counseling for victims' rights, for the feelings [he has] towards other people, for drug abuse, [and] the other issues that have appeared over the years in [his] case." The court believed DJF was a necessary placement because the minor had failed in group homes and a nonsecure group home would not be appropriate as the court had no reason to believe the minor would stay in such a placement. The minor filed a timely notice of appeal from the dispositional order committing him to DJF.

6

## DISCUSSION

The minor challenges his commitment to DJF on various grounds, none of which requires reversal.

We initially conclude the minor's DJF commitment was not barred by section 733, subdivision (c) (§ 733(c)). Section 733 reads, in pertinent part: "A ward of the juvenile court who meets any condition described below shall *not* be committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities: [¶] . . . [¶] (c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and the *most recent offense alleged in any petition* and admitted or found to be true by the court is *not* described in subdivision (b) of Section 707 [(§ 707(b)] . . . ." (Italics added.) "The effect of the statute is to preclude [DJF] commitment unless the minor's most recent sustained petition charged the minor with one of the crimes enumerated in section 707(b). [¶] Section 707(b) itemizes a number of specific criminal offenses, which we refer to simply as [DJF-]eligible offenses. These offenses include robbery (§ 707(b)(3)) . . . ." (*In re D.J.* (2010) 185 Cal.App.4th 278, 284.)

The minor contends his "most recent offense alleged in any petition and admitted or found to be true" was the probation violation alleged in the February 2012 pleading, and therefore, the commitment to DJF was foreclosed because this latest pleading became the relevant petition for determining his most recent offense alleged in any petition for purposes of section 733(c). We disagree. Concededly, the prosecutor's February 2012 pleading uses Judicial Council forms JV-600 and JV-620 and section 602(a) boxes are checked on the cover page. However, that pleading "did not seek an adjudication that [the minor] had committed new offenses. Rather, [its] purpose was to initiate proceedings under section 777, alleging the crimes only as violations of [the minor's] probation . . . ." (*In re D.J.*, *supra*, 185 Cal.App.4th at p. 286; see also *In re M.B.* (2009) 174 Cal.App.4th 1472, 1476.)[2] Additionally, the February 2012 pleading was litigated as

---

[2]  We note that at the time of the filing of the February 2012 pleading, the Judicial Council had issued a new form JV-620, revised January 1, 2007, and a new stand-alone form for optional use as a notice of probation violation in juvenile cases under section

7

a probation violation, and not a new wardship petition. At the February 3, 2012 detention hearing, the juvenile court noted the minor was "charged with violating his probation" and he was being detained "for the violation." At the commencement of the jurisdictional hearing, the prosecutor stated the case against the minor is a "777 . . . ." At the conclusion of the evidence, the prosecutor began his argument by noting that the People had "only filed a 777 against [the minor]. So at this point our burden is only a preponderance of the evidence . . . . [and not proof] beyond a reasonable doubt." The prosecutor concluded by arguing that the People had "proved this case by a preponderance of the evidence against [the minor]. We'd ask that there be a finding in the language as stated in the petition." Following the completion of argument, the juvenile court found the minor had "violated his probation as alleged in the petition in all parts . . . ." The court also commented that "if the burden had been beyond a reasonable doubt as to [the minor], I don't think I would have made a finding . . . . Since the burden was lesser on [the minor], there is enough evidence to persuade me that he was involved in all of this." Thus, although the juvenile court found the minor had violated probation, such a finding "did not supersede" the earlier sustained petition charging a DJF-eligible robbery offense admitted by the minor in February 2011. (*In re D.J., supra*, at p. 286; see *In re M.B., supra*, at pp. 1477-1478 [court interpreted the word "offense" in section 733(c) to exclude a probation violation].) Thus, for purposes of section 733(c), the relevant petition was the February 2011 section 602 petition, by which the prosecution sought a wardship based on the minor's commission of a robbery, a section 707(b) offense, and was sustained based on the minor's admission. Consequently, the juvenile

---

777 (JV-735, revised January 1, 2012). Because "there are significant procedural differences between a probation violation notice under section 777, and a petition under section 602, . . . we respectfully suggest that" when appropriate, probation officers and prosecutors should use the most current Judicial Council form "specifically designed for use as a notice of probation violation in juvenile cases under section 777." (*In re D.J., supra,* 185 Cal.App.4th at p. 288, fn. 8.)

8

court properly found the minor was eligible for DJF commitment because the most recent offense alleged in a petition admitted to be true was a DJF-eligible robbery offense. [3]

The minor also argues that his right to due process was violated because he was not given notice he could be committed to DJF based on his prior robbery offense and for violating his probation. However, because the minor "did not raise a due process objection in the [juvenile] court, he may not raise it for the first time on appeal." (*In re Brian K.* (2002) 103 Cal.App.4th 39, 42.) In all events, the minor has not demonstrated prejudicial error. "[T]he essence of due process is actual notice and a 'meaningful opportunity' to be heard." (*Ibid.*) At the commencement of the March 13, 2012, dispositional hearing, the juvenile court specifically noted the probation department had recommended continuing the placement order and "[t]here's also some consideration of" DJF. Thus, both minor and his counsel were aware of the court's intent to consider a commitment to DJF. At no time did minor or his counsel raise any objection concerning the minor's lack of notice that his prior robbery offense could be used as a basis for a DJF commitment or that his violation of probation could result in a DJF commitment. The court did not deny the minor "the opportunity to be heard, and he has not shown how its actions prejudicially impacted his procedural rights." (*Id.* at p. 43; *In re Donnell L.* (1989) 212 Cal.App.3d 185, 190, 192 [court upheld commitment to CYA [now DJF] even though not demanded in prosecution's supplemental petition to modify placement order where minor and his counsel had actual notice, were adequately apprised of the prosecution's intent to recommend the greater level of confinement, and had sufficient opportunity to respond to the prosecution's recommendation].)

Finally, we see no merit to the minor's arguments that the juvenile court abused its discretion in committing him to DJF. Although "juvenile proceedings are primarily

---

[3] We see nothing in *In re Greg F.* (2012) 55 Cal.4th 393, which supports a contrary conclusion. Unlike the situation in *Greg F.*, in this case the February 2012 pleading was an effective notice of probation violation pursuant to section 777, not a new section 602 wardship petition, and no pleading document was dismissed thereby making the minor eligible for a commitment to DJF based on an earlier sustained petition charging a DJF-eligible offense.

9

'rehabilitative' ([§ 202,] subd. (b)), and punishment in the form of 'retribution' is disallowed (*id.*, subd. (e))," "[w]ithin these bounds, the [juvenile] court has broad discretion to chose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. ([*Ibid.*])" (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) We are not persuaded by the minor's reliance on cases that "predate the amendment of former . . . section 502 (now § 202) regarding the purposes of the Juvenile Court Law." (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57.) "In 1984, the Legislature amended the statement of purpose found in section 202. . . . It now recognizes punishment as a rehabilitative tool and emphasizes the protection and safety of the public. (Stats. 1984, ch. 756, §§ 1, 2.) The significance of this change in emphasis is that when we assess the record in light of the purposes of the Juvenile Court Law [citation], we evaluate the exercise of discretion with punishment and public safety and protection in mind. Such was not the case before 1984." (*In re Lorenza M., supra*, at pp. 57-58, fn. omitted.)

Pursuant to section 734, a juvenile court is authorized to commit a minor to DJF when it is "fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the" DJF. As an appellate court, we review "a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.)

At the time of the March 13, 2012 dispositional hearing, the minor was then 16, and had continued his delinquent conduct over a period of three years despite court intervention and placement at two group homes. "Where the minor has previously failed in a series of local programs . . . statewide confinement in the structured setting offered by DJF may decisively outweigh other considerations." (*In Re Greg F., supra*, 55 Cal.4th at p. 418; see *In re Martin L.* (1986) 187 Cal.App.3d 534, 544 ["[c]ircumstances in a particular case may well suggest the desirability of a [DJF] commitment despite the availability of . . . alternative dispositions"].) The minor argues that the juvenile court

10

had knowledge of a practical alternative to DJF, and asks us to consider that in August 2011, the Rite of Passage staff had interviewed him and was willing to accept his placement at the facility. However, the minor fails to note that during his interview, he said he would not cut his hair and he intended to refuse placement at the program. Thus, contrary to the minor's contention, we see no abuse of discretion in the juvenile court's rejection of a placement at Rite of Passage.

Nor are we persuaded by the minor's arguments challenging the juvenile court's finding that he would probably benefit from a DJF commitment. "[T]he juvenile court found it was probable the minor would benefit from being committed to [DJF], because it anticipated the minor's needs would be addressed by programs offered at [DJF]. There is no requirement that the court find exactly how a minor will benefit from being committed to [DJF]." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.) The minor contends there was no substantial evidence to show he would receive adequate physical and mental health services at DJF. However, before accepting a minor at DJF, it is the responsibility of the Director of the Division of Juvenile Justice to determine if a "ward can be materially benefited by [DJF's] reformatory and educational discipline, and if [DJF] has adequate facilities, staff, and programs to provide that care." (§ 736, subd. (a).) "To determine who is best served by the Division of Juvenile Facilities, and who would be better served by the State Department of Mental Health," "the Director of the Division of Juvenile Justice and the Director of the State Department of Mental Health shall, at least annually, confer and establish policy with respect to the types of cases that should be the responsibility of each department." (§ 736, subd. (b).) The record indicates that before its acceptance of the minor, DJF received a mental health assessment of the minor from the county Guidance Center. The juvenile court could – and this court does – presume that, if DJF determines that the minor has special or exceptional needs, such needs will be met. (Evid. Code, § 664 [presumption that official duty has been regularly performed].) If the minor believes DJF is "unable to, or failing to, provide treatment consistent with

11

[s]ection 734," he may seek relief in the juvenile court.  (§ 779 [4]; see *In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1322-1323.)

## DISPOSITION

The dispositional order is affirmed.


_____

Jenkins, J.


We concur:


_____

McGuiness, P. J.


_____

Siggins, J.

---

[4]  Section 779 reads, in pertinent part: "The court committing a ward to the Youth Authority [now DJF] may thereafter change, modify, or set aside the order of commitment . . . .  This section does not limit the authority of the court to change, modify or set aside the order of commitment after a noticed hearing and upon a showing of good cause that the Youth Authority [now DJF] is unable to, or failing to, provide treatment consistent with Section 734."