Filed 12/29/22  P. v. Price CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALBERT LORENZO PRICE,<br><br>    Defendant and Appellant. | F084767<br><br>(Super. Ct. No. CF90418521)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  David Andrew Gottlieb, Judge.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Hill, P. J., Levy, J. and Poochigian, J.

Defendant Albert Lorenzo Price was convicted of second degree murder and discharging a firearm at an occupied vehicle in 1990. He petitioned for resentencing pursuant to Penal Code former section 1170.95,[1, 2] based upon the changes to the felony-murder rule and the natural and probable consequences doctrine of aider and abettor liability effectuated by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). His petition was denied.

Appointed counsel for defendant asked this court to review the record to determine whether there are any arguable issues on appeal.[3] (*People v. Wende* (1979) 25 Cal.3d

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise noted.

[2] In the wake of our Supreme Court's decision in *People v. Lewis* (2011) 11 Cal.5th 952, the Legislature amended former section 1170.95 to adopt certain of *Lewis*'s holdings. (Stats. 2021, ch. 551, § 1, subd. (b).) The Legislature later renumbered the provision to section 1172.6, without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) Citations in this opinion to section 1172.6 are to the current version of the provision as codified in section 1172.6; citations to former section 1170.95 are to the version of the provision as it existed on the date of the trial court's order on defendant's petition.

[3] When we began our review of this case, it was an open question whether *Wende* review was required from an appeal of a postconviction order denying sentencing relief. Many courts had held that such review was not required. (E.g., *People v. Cole* (2020) 52 Cal.App.5th 1023, 1028, review granted Oct. 14, 2020, S264278 ["*Wende*'s constitutional underpinnings do not apply to appeals from the denial of postconviction relief"]; *People v. Freeman* (2021) 61 Cal.App.5th 126, 133, review denied May 12, 2021, S268011 [*Wende* procedures inapplicable to appeal from an order revoking postrelease community supervision]; *People v. Flores* (2020) 54 Cal.App.5th 266, 273 [*Wende* procedures inapplicable to appeal from denial of petition for resentencing under § 1172.6].)

On December 19, 2022, our Supreme Court held in *People v. Delgadillo* (Dec. 19, 2022, S266305) __ Cal.5th __ (*Delgadillo*), that *Wende* procedures do not apply to appeals from the denial of postconviction relief under section 1172.6 and created a different procedure for such situations. (*Delgadillo*, at [pp. 16–17].) The court instructed that on appeal from an order denying section 1172.6 relief, a counsel who finds no arguable issue should file a brief informing the appellate court of that determination and include a concise factual recitation. The appellate court shall send a copy of the brief to the defendant informing the defendant of the right to file a supplemental brief and that if

2.

436.) Defendant was advised of his right to file a letter stating any grounds on appeal within 30 days of the date of filing of the opening brief. Defendant filed a letter contending that the trial court told him at his original sentencing hearing that he would be housed at the former Department of Youth Authority (or California Youth Authority, or CYA),[4] but he was never afforded that opportunity. He has identified no basis for relief, nor have we. We affirm.

## PROCEDURAL SUMMARY

On May 14, 1990, the Stanislaus County District Attorney filed an information charging defendant with the murder of Amy Southern (§ 187; count 1), two counts of assault with a firearm (§ 245, subd. (a)(2); counts 2 & 3), and discharge of a firearm at an occupied vehicle (§ 246; count 4). As to counts 1 through 3, the information further alleged that defendant personally used a firearm (§ 12022.5, subd. (a)).

On October 2, 1990, the jury found defendant guilty of second degree murder on count 1, guilty as charged on count 2, and found true the firearm enhancement on count 1. The record reflects no further verdicts or findings on special allegations.

---

one is not filed within 30 days, the court may dismiss the matter. If a supplemental brief is filed, we must evaluate the contentions in it. If a supplemental brief is not filed, we may dismiss the appeal as abandoned without a written opinion. However, we retain discretion to independently review the record. (*Delgadillo*, at [pp. 17–19].) Thus, in *Delagdillo*, at [pp. 19–20], the Supreme Court exercised that discretion because the notice sent to Delgadillo was "suboptimal," having cited *Wende* after counsel had filed a *Wende* brief, but not mentioning that Delgadillo's appeal might be dismissed if he did not file a supplemental brief, thereby making it "reasonabl[e]" for Delgadillo to conclude "that the Court of Appeal would conduct an independent review of the record, even absent a supplemental brief." Because the notice sent to defendant in this case was similarly "suboptimal[,]" we exercise our discretion to independently review the record.

[4]    In 2005, the powers of the CYA were transferred to the Division of Juvenile Facilities (DJF). (Gov. Code, § 12838.5; Welf. & Inst. Code, § 1710.) DJF is part of the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). (*In re D.J.* (2010) 185 Cal.App.4th 278, 280, fn. 1.)

On November 1, 1990, the trial court sentenced defendant to 18 years to life as follows: on count 1, 15 years to life plus a three-year firearm enhancement; on count 2, the sentence was stayed pursuant to section 654.

On June 30, 1992, this court filed an unpublished opinion in case No. F014880, affirming defendant's convictions.[5] (*People v. Price* (June 30, 1992, F014880) [nonpub. opn.].)

On April 11, 2022, defendant filed a petition for resentencing pursuant to former section 1170.95.

On July 28, 2022, the trial court denied defendant's petition, finding that defendant was the actual shooter and was therefore ineligible for relief.

On August 3, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY[6]

"Cheryl S. (17 years) befriended Bobby Joe Price, known as 'BJ' (no relation to defendant), in Montana in 1988. When BJ was jailed for assaulting someone with a knife, Cheryl returned to Fresno, her hometown. About February 10, 1990, BJ and two friends, John Mason (John) and Randy McArthur, drove from Montana to Fresno to visit Cheryl. She let them stay at her apartment. Cheryl had not informed BJ she had a new boyfriend, Paul Duncan (Paul).

"On February 11, 1990, Cheryl, BJ, John, Amy Southern (Amy) and others went to Lost Lake. Although everyone in the group was under 21 years of age, they took two cases of beer with them. BJ became intoxicated. He and Cheryl argued on the way home and later at a bowling alley. During the argument BJ hit Cheryl, pushed her against a wall and

---

[5]     Defendant requested that we take judicial notice of our opinion in *People v. Price*, *supra*, F076571. (Evid. Code, §§ 452, subd. (d), 459, subds. (a)–(c).) Because that prior opinion is contained in the clerk's transcript on this appeal, we need not take judicial notice to consider the prior opinion. We therefore decline to take judicial notice.

[6]     Our factual summary is drawn from the statement of facts presented in this court's June 30, 1992 opinion on defendant's direct appeal. We have also independently reviewed the record and modified the statement of facts presented in our prior opinion such that it is accurate and complete.

threw her to the ground. Cheryl refused to get back in the truck with BJ and instead got a ride to a [fast food restaurant] where Paul was working.

"Cheryl reported the assault to Paul who volunteered to help her get BJ to leave her apartment. Paul got four friends, including defendant, who was 18 years old, to accompany him to Cheryl's apartment to 'kick' BJ out. Cheryl warned Paul's friends the men from Montana might have weapons or be dangerous. The group drove to Cheryl's apartment … and waited for BJ to arrive. When they saw [BJ's] truck drive up, the four friends hid. John was driving the truck, [BJ] was in the passenger seat[,] and Amy was seated between the two men.

"BJ left the truck and argued briefly with Paul and Cheryl. Cheryl told BJ to take his belongings and leave her apartment. BJ was very angry and profane. He refused to retrieve his belongings but got back in the truck. John backed the truck out the apartment driveway and parked on Bullard in front of the apartment complex. Cheryl walked to the truck and argued with BJ again. He screamed obscenities at her and said he would 'whip Paul's a[**]' and kill him. Paul stood a few feet away in the apartment driveway to the front of the truck. The other men were further away, behind a fence where they were not visible to those in the truck. The truck began to drive away slowly. BJ was still yelling at Cheryl who walked along beside the truck. As the truck passed Paul, defendant walked to the middle of the street, pulled a revolver from his waistband and fired three shots at the vehicle. One bullet hit Amy in the head killing her.

"Defendant claimed the killing was an accident. He testified Paul asked him to come along to prevent problems when Cheryl ordered BJ to leave her apartment. Paul is short and slight, 5' 7" 125 pounds, whereas defendant is 5' 11" and weighs 225 pounds. Paul told defendant BJ liked to fight, had been in and out of jail and was a violent person. Paul handed defendant a gun when the men were at Cheryl's apartment complex. As the truck drove forward, defendant heard a noise 'like a car door slam' and thought BJ was getting out to attack Paul or Cheryl. He intended to fire warning shots over the truck to scare off BJ but the gun discharged as he was raising it to fire overhead."

5.

## DISCUSSION

### *Wende* Review

As noted above, defendant's appellate counsel filed a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, asserting he could not identify any arguable issues in this case. After defendant's appellate counsel filed his *Wende* brief, by letter dated October 17, 2022, we invited defendant to inform this court of any issues he wished addressed. On October 31, 2022, defendant responded to our letter, alleging that the trial court told him "on [the] record that [he] would be housed [at the former] California Youth Authority to serve [his] sentence [un]til [he] got in trouble … and [was] sent to prison." He contends that he was never housed at the former CYA. Defendant's allegation that the court told him he would be housed at CYA is unsupported by the portion of the record he submitted. The court engaged in the following exchange with the prosecutor:

> "[The Court]: Mr. [Prosecutor], do you … know of any reason why [defendant] should not be housed at CYA, considering his background?
>
> "[Prosecutor]: I … don't think they'll take him, but that's more of a practical matter than a legal matter.
>
> "[The Court]: Exactly. I understand that. And that has happened a number of times where we have a violent crime. And it's one of their policies …. [¶] But, any reason that you would point out to the Court why the Court should not house him at CYA?
>
> "[Prosecutor]: I don't know of any legal reason why that would preclude this. And I think the Court's finding on that is probably no more than a recommendation."
>
> "[The Court]: I agree there. They have the ultimate authority."

The trial court then recommended that defendant be housed at the former CYA. The former CYA evidently disagreed with the trial court's housing recommendation and defendant was housed at an adult prison. That housing decision provides no basis for relief on this appeal from defendant's petition to resentence.

Next, we considered denial of defendant's petition on its merits.  "Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'  (Stats. 2018, ch. 1015, § 1, subd. (f).)  In addition to substantively amending sections 188 and 189, … Senate Bill 1437 added section 1170.95 [now renumbered as section 1172.6], which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief."  (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

In October 2021, Senate Bill No. 775 (2021–2022 Reg. Sess.) was enacted and amended former section 1170.95, effective January 1, 2022.  (Stats. 2021, ch. 551, § 1).  As a result of these amendments, section 1172.6 provides that "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances.  (§ 1172.6, subd. (a).)

It is undisputed that the jury found defendant guilty of murder because he was the actual killer.  He was not entitled to relief pursuant to former section 1170.95 or section 1172.6.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 59–60.)  No error resulted from denial of defendant's petition.

After a thorough review of the record, we agree with defendant's appellate counsel there are no arguable issues in this case.  Defendant's petition was properly denied and there is nothing in this record to suggest any error occurred.

## DISPOSITION

The order is affirmed.