Filed 7/31/14  In re A.A. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In A.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>A.A.,<br><br>    Defendant and Appellant. | F068247<br><br>(Super. Ct. No. 511925)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nan Cohan Jacobs, Judge.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Plaintiff and Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

_____

[*] Before Levy, Acting P.J., Cornell, J., and Poochigian, J.

## INTRODUCTION

A.A., a minor at the time of the underlying proceedings, appeals from the disposition order of the Stanislaus County Juvenile Court committing him to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ).[1] Appellant contends the court abused its discretion by failing to order a less restrictive alternative placement. Appellant's commitment to the DJJ followed multiple sustained juvenile petitions and his unsuccessful participation in other rehabilitative programs. The record clearly shows that the juvenile court weighed and considered the probable benefits of a DJJ commitment against the ineffectiveness of less restrictive placements. We affirm the challenged order.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prior Adjudications*

Appellant has a history of delinquency dating back to December 2009 when, at 13 years of age, he was charged with brandishing a deadly weapon (Pen. Code, § 417, subd. (a)(1), count 1) and battery (Pen. Code, § 242, count 2). In January 2010, appellant was adjudged a ward of the court, placed on probation, and ordered to spend 30 days in juvenile hall.

In April 2010, appellant admitted committing misdemeanor vandalism (Pen. Code, § 594, subd. (b)(1)) and a gang enhancement (Pen. Code, § 186.22, subd. (a)). Appellant was continued as a ward of the court and ordered into custody for 45 days with credit for

---

[1]As of July 1, 2005, the correctional agency formerly known as the California Youth Authority became known as the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF). The DJF is part of DJJ. (Gov. Code, §§ 12838, subd. (a), 12838.5; Pen. Code, § 6001; Welf. & Inst. Code, § 1710, subd. (a).) Statutes that formerly referred to the Department of the Youth Authority now refer to the DJF. However, the parties to this appeal, the juvenile court, case law, and certain of the California Rules of Court, refer to the DJF as the DJJ. (See, e.g., *In re D.J.* (2010) 185 Cal.App.4th 278, 280, fn. 1; Cal. Rules of Court, rule 5.805.) We refer to the DJF as the DJJ.

time served. In June 2010, appellant admitted an allegation that he committed misdemeanor spousal/cohabitant battery (Pen. Code, § 243, subd. (e)(1)). In July 2010, appellant was continued as a ward of the court and ordered to serve time in juvenile hall.

In August 2010, appellant admitted violating the terms of his probation by failing to regularly attend school and participating in gang activity. Appellant was continued as a ward of the court and ordered to spend additional time in juvenile hall. In January 2011, appellant admitted violating the terms of his probation by failing to follow his curfew, failing to obey all laws, and failing to follow the reasonable orders of his parents. Appellant was again ordered to spend additional time in juvenile hall.

In March 2011, appellant admitted new allegations in a wardship petition that he feloniously received a stolen vehicle. Appellant was ordered to spend 90 days in juvenile hall, with 27 days credit for time served, plus 30 days on electronic monitoring.

In June 2011, a new wardship petition was filed alleging three felony counts. The first two counts alleged appellant committed two acts of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)) and a third count alleged appellant committed battery with serious bodily injury (Pen. Code, § 243, subd. (d)). There were further allegations that appellant acted in all three counts for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)) and in count 1 that he personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)).

In August 2011, appellant admitted one count of assault with force likely to produce great bodily injury and the gang enhancement. The remaining allegations were dismissed.[2] In October 2011, the juvenile court ordered appellant to serve 320 days in

---

[2]On June 7, 2011, two juveniles were attacked by three male juveniles, including appellant. The two victims were jumped. The first victim was punched and kicked in the head and the body. When the second victim attempted to help, he was stabbed in the back. Appellant was quickly apprehended. Appellant admitted that he chased one of the victims and stabbed him in the head and back. Appellant slashed his brother's leg and cut his own thumb.

3.

the care and custody of the probation officer with credit for 120 days served. Appellant was to be placed in the suitable home of a relative, a foster home, or a group home. Appellant was ordered housed in juvenile hall pending his placement elsewhere.

On May 17, 2012, appellant was placed in a Nevada charter school. Appellant was returned to juvenile hall on June 5, 2012, due to circumstances beyond his control, including licensing issues with the facility. On July 5, 2012, appellant was placed with Courage to Change in Exeter. On November 20, 2012, appellant was terminated from this program for his refusal to participate in and his lack of respect for the program, including his incitement of confrontations with staff and residents.

### Current Adjudication

Appellant was placed with the Aaron's Boys Home in Atascadero on February 14, 2013. Appellant was reported absent without leave from the home on April 29, 2013. On May 6, 2013, appellant failed to appear for a status review hearing and a bench warrant was issued for his arrest. On May 9, 2013, appellant was arrested at his parents' home. On August 6, 2013, appellant waived his right to a contested hearing and admitted he violated the terms of his probation by not following the rules of his placement. The probation officer's report prepared for the disposition hearing expressed particular concern for appellant's ongoing association with the Norteño gang, poor anger management, and his inability to abide by the terms of his probation in a structured environment. Appellant was 17 years old at the time the probation report was prepared. Appellant had been prescribed psychotropic medications to treat his depression, anxiety, mood disorder, and insomnia.

The probation officer noted appellant had been on probation for about 43 months and had not shown any progress toward rehabilitation. Appellant reported that he began smoking marijuana when he was 12 years old. He began smoking it more frequently when he was 14 years old. Appellant admitted he had difficulty managing his emotions

4.

and would blow up when he was angry. Prior to 2013, appellant had been defiant of staff and disruptive during his commitments.

Since appellant's arrest in May 2013, he had been involved in five separate incidents while in custody. During routine searches of appellant's locker in May 2013, authorities found multiple references and statements consistent with gang membership. In early July 2013, appellant yelled at staff for turning off their radios. Appellant hit his sink, kicked a door, and began yelling profanities. Attempts by staff to counsel appellant were unsuccessful. Appellant continued to remain disruptive and yelled gang slogans.

In mid-July 2013, authorities searching appellant's quarters and found contraband and gave appellant a deduction of daily behavioral points. Appellant yelled profanities at staff. When staff counseled appellant to discontinue his negative behavior, appellant remained disruptive intermittently for four hours. Appellant's conduct incited other minors to become disruptive as well. Appellant had to be removed from his quarters.

In late July 2013, appellant was involved in a unit disruption. Appellant was yelling from his quarters and continuously pressing the room emergency buttons. Attempts by staff to counsel appellant were to no avail. The probation officer concluded that appellant's performance on probation was unsatisfactory and recommended his commitment to the DJJ.

On October 3, 2013, the juvenile court presided over a contested disposition hearing. Vickie Trask, appellant's vocational instructor with the Stanislaus County Office of Education, testified that she had taught appellant for the past two or three years, and he followed her directives and was not disruptive in class. Trask believed appellant was tracking better, seemed more focused, and was more responsible.

Appellant had received 23 high school units between May 2013 and October 2013 and could earn his high school diploma by the end of 2013 provided he passed the CAHSEE. Trask, however, was unaware of the times appellant was found with writings

indicating his dedication to the Norteño gang or his disciplinary issues while committed to juvenile hall.

Deputy Probation Officer Sabrina Biondo testified that she had been in contact with the DJJ to find out what programs and services they had available for appellant. The DJJ had several vocational services available, including culinary, HVAC, landscaping, forklift, and computer training. Appellant would also receive psychiatric, psychological, and psychosocial evaluations, as well as mental health reviews. Appellant would receive assistance in receiving his GED and would have access to an AA degree. If needed, appellant would receive treatment for substance abuse, gang intervention, and aggression replacement.

Local facilities could provide appellant with mental health services. Locally, appellant could receive periodic substance abuse education. Some substance abuse treatment was available locally. Many of the vocational services and access to an AA degree that were available at the DJJ were not available locally. There was one out-of-state placement program available in Nevada.

The juvenile court noted that appellant did do better when he was on medications. The court noted, however, that one thing in appellant's history came out loud and clear: his entrenchment in a gang. The court found appellant's gang affiliation was not affected by taking or not taking medication. The court noted that several of appellant's offenses involved acts of violence. The court stated its concern that when appellant stabbed his victim as set forth in the most recent petition, he did so because of his belief that the victim was a rival gang member. The court found appellant had a pattern of gang-related issues.

The court observed that, when appellant ran away from the Aaron's Boys Home in April 2013, he was already on medication and could not blame the lack of medication as a cause of his conduct. The court found that, in balancing all of the facts, appellant needed a more restrictive environment and saw no other alternative at this time. The

court found that appellant would benefit from the rehabilitative services offered at the DJJ. The court observed that appellant's gang writings found in juvenile hall were outrageous, horrifying, and repulsive. The court expressed concern and fear that one day appellant was going to kill someone. The court committed appellant to the DJJ for 118 months with custody credits of 796 days.

## DISCUSSION

Appellant contends the juvenile court erred by ordering his commitment to the DJJ because there was insufficient evidence to support a finding that less restrictive alternatives would not be appropriate and the court viewed appellant's past conduct rather than focusing on his recent efforts at rehabilitation. We disagree and affirm the orders of the juvenile court.

In making a placement determination, the juvenile court "shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (Welf. & Inst. Code, § 725.5.) Additionally, there must be evidence in the record demonstrating both a probable benefit to the minor by a DJJ commitment and the inappropriateness or ineffectiveness of less restrictive alternatives. (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485.)

Appellate courts review a commitment decision by the juvenile court for an abuse of discretion. All reasonable inferences are indulged to support the juvenile court's decision. (*In re Angela M*. (2003) 111 Cal.App.4th 1392, 1396.) Although a DJJ commitment is usually a placement of last resort, the juvenile court is not required to first exhaust all less restrictive alternatives. (*In re Asean D*. (1993) 14 Cal.App.4th 467, 473; *In re Tyrone O*. (1989) 209 Cal.App.3d 145, 151.) A commitment to the DJJ is not an abuse of the juvenile court's discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate. (*In re M.S*. (2009) 174 Cal.App.4th 1241, 1250.)

Appellant relies on *In re Teofilio A*. (1989) 210 Cal.App.3d 571 (*Teofilio A*.). There, the minor had no criminal record, his conduct was not aggressive or assaultive, he was not armed, he threatened no one, and his offense was a single $60 sale of cocaine. (*Teofilio A., supra,* at p. 578.)  The juvenile court in *Teofilio A*. relied exclusively upon the contents of the probation officer's report.  The report, however, failed to show that the probation officer considered less restrictive alternatives and did not address why such alternatives would be ineffective or inappropriate.  In light of those facts, the appellate court found the record to be barren on the crucial issue. (*Id*. at p. 577.)  The facts and procedures in *Teofilio A*. bear little factual resemblance to those in the instant action.

Here, appellant was 17 years old at the time of the October 2013 disposition hearing.  Appellant's recidivism, violent conduct, affiliation and longstanding commitment to the Norteño gang, and his defiance to programming while committed to group homes and juvenile hall were all well documented.  Although there was testimony from appellant's teacher that he was more focused and doing much better with his school work, there was little, if any, evidence that appellant was no longer committed to his gang affiliation.  Appellant, although he was on medication at the time, still absconded from the Aaron's Boys Home.  Appellant also had a long history of defiant and disruptive behavior in his placements.

The juvenile court was well aware of less restrictive commitment alternatives. The court found that appellant's poor behavioral history and gang affiliation, even after receiving medications, made less restrictive commitment alternatives inappropriate.  The court further found that the DJJ would provide appellant services that were not available locally.[3]  We conclude the findings of the juvenile court are supported by substantial

---

[3]In his reply brief, appellant argues that the juvenile court failed to consider both prongs of the test set forth in *Teofilio A*.:  probable benefit of a DJJ commitment to the minor *and* that less restrictive alternatives were ineffective or inappropriate.  Appellant contends the juvenile court failed to properly find that less restrictive alternatives were

evidence in the record, and that the juvenile court did not abuse its discretion in committing appellant to the DJJ.

## DISPOSITION

The orders of the juvenile court are affirmed.

---

ineffective. The juvenile court, however, found that appellant needed a more restrictive environment and saw no alternative—meaning that the court saw no alternative to a DJJ commitment. This finding by the juvenile court demonstrates that the court considered and found ineffective less restrictive alternatives. Although the court did not list these, from the probation officer's report and her testimony, the record is clear that these included potential commitments to a group home, a ranch, and one facility in Nevada. We reject appellant's contention that the juvenile court failed to consider less restrictive alternatives to a DJJ commitment.